UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Dominic Ali, Petitioner

v.

Warden, Northern New Hampshire
      Correctional Facility,
      Respondent

Docket No.: 1:12-cv-00185-JL

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT
OF THE MOTION FOR SUMMARY JUDGMENT**

On May 20, 2013, this Court served the respondent with its Report and

Recommendations, instructing the respondent to file "an answer or to other response"

within 30 days of service.  Doc. 24: 5; Doc. 25: 2[1]

At that time, this Court recognized the following claims as being raised by the

petitioner:

1. . . . . .

2.      [The petitioner's] 2008 enhanced conviction and sentence for second
degree assault violated his Fourteenth Amendment right to due process and his
Sixth Amendment right to a fair trial, in that:

a.      The statute used to enhance the charge, RSA § 173-B:9, IV(b), is
ambiguous, and the trial court failed to follow the rule of lenity when it allowed
[the petitioner] to be convicted and sentenced of second degree assault charged as
a class A felony;

b.      The 2004 conviction used to enhance the second degree assault charge
was obtained through [the petitioner's] nolo contendere plea, which [the
petitioner] entered neither knowingly nor voluntarily, and which resulted from
ineffective assistance of trial counsel;

---

[1] "Doc.:_" refers to this Court's document and page number.

c. [The petitioner's] 2008 sentence for second degree assault was enhanced based on facts not decided by the jury.

3. [The petitioner's] 2008 conviction violated his Sixth and Fourteenth Amendment rights to due process and a fair trial, in that, motivated by racial bias, the trial court allowed the prosecutor to divide a single count indictment into multiple counts, which overcharging resulted in jury confusion, harassment of The petitioner, and unfair prejudice.

4. [The petitioner's] 2008 conviction violated his Sixth and Fourteenth Amendment rights to due process and a fair trial, in that his conviction was based on the victim's false testimony, which the prosecutor knew to be false, and which the state had improperly coerced from the victim.

5. . . . .

6. Attorneys Helen Sullivan and Aileen O'Connell violated [the petitioner's] Sixth Amendment right to the effective assistance of counsel in that they:

a. Failed to depose all witnesses including the state's experts pretrial;

b. Failed to consult with or obtain a medical expert to rebut the state's experts;

c. Failed to investigate the status of the state's child protective services investigation of the victim;

d. Failed to introduce evidence regarding the victim's alcoholism, drug addiction, mental illness, and frequent failure to take prescribed medication, which, if admitted, would have led the jury to question her credibility;

e. Failed to object to the prosecutor's introduction of the testimony of the victim, knowing that the prosecutor had called the victim as a witness despite the prosecutor's knowledge that her testimony was false and coerced by the state;

f. Failed to object to the prosecutor's expression, during summation, of his personal opinion of [the petitioner's] guilt; and

g. Failed to investigate whether the 2004 conviction which provided the basis for enhancing the 2008 felony charge, had been obtained in violation of The petitioner's constitutional rights.

h. . . . .

7. Attorney Anthony Introcaso, appointed to represent [the petitioner] at sentencing, denied [the petitioner] the effective assistance of counsel, in violation of The petitioner's Sixth Amendment rights, in that Attorney Introcaso:

2

a. Failed to challenge the PSI's materially incorrect statement of [the petitioner's] prior criminal record, and inaccuracies in the PSI regarding [the petitioner's] current convictions;

b. Failed to provide the PSI to [the petitioner] prior to the sentencing hearing;

c. Failed to assert as a mitigating factor during sentencing that [the petitioner] had received ineffective assistance of counsel at trial, insofar as Attorney Introcaso knew, but failed to tell the trial judge, that trial counsel never advised The petitioner before trial of the improbability of acquittal and the benefits of accepting a plea bargain; and

d. Did not review the sentencing recommendations prepared by [the petitioner's] trial counsel prior to the sentencing hearing, and did not prepare or offer the sentencing court any sentencing proposal on [the petitioner's] behalf.

8. [The petitioner] received ineffective assistance of counsel from his appellate counsel, New Hampshire Assistant Appellate Defender Attorney Paul Borchardt, in violation of [the petitioner's] Sixth Amendment rights, in that Attorney Borchardt:

a. Failed to brief, in the NHSC, all issues listed in the notice of appeal, including the trial court's misapplication of RSA § 173-B:9, IV(b);

b. Acted under an actual conflict of interest, based on the affiliation of the New Hampshire Public Defender and New Hampshire Appellate Defender offices, which precluded him from presenting meritorious claims on appeal, including the ineffective assistance of trial counsel; and

c. Failed to brief any issues upon which the NHSC could reverse [the petitioner's] conviction and/or sentence.

9. Attorney Ghazi Al-Marayati provided ineffective assistance of counsel in connection with [the petitioner's] motion for a new trial, in violation of The petitioner's Sixth Amendment right to counsel, in that Attorney Al-Marayati incorrectly informed [the petitioner]: (a) that trial counsel had done everything possible for his defense; and (b) that appellate counsel was providing good representation, and the incorrect information led [the petitioner] to withdraw the new trial motion.

Doc. 24: 2-5 (ellipses in original).  On June 19, 2013, the respondent filed an answer with

this Court.

On July 3, 2013, this Court granted the petitioner's motion to amend and added

the following issues:

> 10. [The petitioner's] 2008 conviction violated his Fourteenth Amendment right
> to due process, because they were enhanced by [his] 2004 conviction that was the
> product of a nolo contendere plea tendered when [he] was not "competent" to
> stand trial.

> 11. [The petitioner's] 2008 conviction violated his Fourteenth Amendment right
> to due process, in that New Hampshire Supreme Court ("NHSC") Justice Carol
> Ann Conboy, who was a member of the NHSC panel that affirmed the conviction,
> was biased: (i) because in March 2004, she issued a temporary protective order
> and presided over a hearing in a proceeding related to [his] 2004 conviction for
> violating a protective order, which was used to enhance [his] 2008 conviction and
> sentence; and (ii) as evidenced by her denial of [his] motion to file a pro se brief
> in [his] direct appeal of his 2008 conviction, in a manner contrary to "prevailing
> law."

Doc. 32.  The petitioner was given 14 days to demonstrate exhaustion.

The respondent now asks this Court to grant the attached motion for summary

judgment.

## I.        STATE PROCEDURAL BACKGROUND

In 2008, a Hillsborough County grand jury indicted the petitioner, Dominic Ali, on two counts of second-degree assault, *see* N.H. Rev. Stat. Ann. § 631:2 (2007), two counts of simple assault, *see* N.H. Rev. Stat. Ann. § 631:2-a (2007), two counts of false imprisonment, *see* N.H. Rev. Stat. Ann. § 633:3 (2007), and two counts of obstructing a report of crime or injury, *see* N.H. Rev. Stat. Ann. § 642:10 (2007).  T1 4-9.[2]  Before trial, the petitioner moved in limine to exclude testimony from two witnesses regarding the victim's injuries, alleging that they were expert witnesses and that the State had not complied with court rules regarding disclosure of experts.  Exh. B: A1-A3.[3]

The State objected, arguing that the witnesses were not experts, that the defense had been fully informed of the substance of their testimony, and that "[n]o opinions or specialized/technical knowledge [would] be elicited" from either witness.  Exh. B: A4-A6.  The Hillsborough County Superior Court for the Northern District (*Barry*, J.) denied the motion without expressly stating whether the witnesses were experts; it rather ruled that "defense counsel has been provided discovery in accordance with Rule 98, has known of the intent of the State to call Dr. Seidner and the E.M.T. as witnesses, [and] has not demonstrated prejudice of any kind to the petitioner or to any prospective defense." Exh. B.

---

[2]  References to the record are as follows: "Exh. A" is the notice of appeal; "Exh. B" is the petitioner's brief and the appendix to the petitioner's brief;  "Exh. C:_" is the State's brief.  "Exh. D:_" is the order on the petitioner's direct appeal.  "T1" and "T2" are the two volumes of trial transcript.

[3]  "Exh._" refers to the exhibit in support of the motion for summary judgment, identifying letter, and page number.  Exhibits A through D were filed conventionally with this Court.  The remaining exhibits are attached to the petitioner's motion and memorandum.

The petitioner was tried by a jury in the same court (*Abramson*, J.) on September 25-26, 2008.  At the close of evidence, the court dismissed three of the eight counts.  T1 144-45.  The jury acquitted the petitioner on one count of simple assault.  T2 190.  It convicted him on both counts of second-degree assault, one count of false imprisonment, and one count of obstructing a report of crime or injury.  T2 189-91.  The court sentenced him to two concurrent sentences of twelve months in the House of Corrections on the misdemeanor convictions, followed by a term of five to ten years in the state prison on one second degree assault count, with a concurrent sentence of three and a half to seven years on the other second degree assault count.  Exh. A: 7-10.

The petitioner filed a direct appeal with the New Hampshire Supreme Court.  His brief was filed on September 28, 2009.  Exh. B.  He raised the following issues:  (1) whether the trial court correctly admitted testimony by the doctor and the emergency medical technician regarding the victim's injuries; (2) whether the trial court properly excluded as evidence that DCYF had opened a case on the victim after the petitioner called the police claiming that she had left her children alone; (3)  whether the court correctly found no double jeopardy violation when the jury convicted the petitioner on two counts of second degree.   Exh. B, Exh. C.  The State filed its brief on October 30, 2009.  Exh. C.  In it, the State conceded the third issue.   Exh. C.

On January 23, 2010, while the petitioner's appeal was pending, he filed a *pro se* motion to appoint new counsel, alleging that his trial counsel was ineffective.  Exh. E:1.  On January 28, 2010, the state court removed the petitioner's appeal from its docket and stayed the case so that the petitioner could pursue his motion for a new trial in the trial court.  Exh. E: 1.

By motion dated March 15, 2010, but apparently not received by the trial court until March 22, 2010 (*see* Exh. F; Exh. G: 1-2[4]), the petitioner filed a motion for a new trial alleging that trial counsel was ineffective for failing to pursue an interlocutory appeal and that, as a result of trial counsel's deficient performance, the jury was allowed to hear "evidence and testimony prejudicial" to the petitioner's case.  Exh. F: 1.

On July 2, 2010, the petitioner, through his counsel, withdrew the motion for a new trial.  Exh. G.  The state court then proceeded with his case, and, on December 13, 2010, vacated one of his convictions, but otherwise affirmed the trial court.  Exh. D.

At some point, the petitioner also filed a motion to withdraw his 2004 guilty plea.  On February 15, 2011, the trial court heard testimony on the petitioner's request to withdraw his 2004 plea.  Exh. H: 4.  On March 3, 2011, the trial court (*Bornstein*, J.) denied the request to withdraw the plea. Exh. H: 7.  The petitioner filed a notice of appeal.  Exh. H.[5]  The state court declined the appeal as untimely on July 25, 2011.  Exh. H: 14.

The petitioner filed another pleading alleging ineffective assistance of trial counsel on April 4, 2011, Exh. I, and on June 9, 2011, the trial court (*Garfunkel*, J.) ordered the petition dismissed with prejudice because the petitioner had earlier withdrawn his petition and, "[a]t some point… must be bound by his earlier decisions,

---

[4] The court's order appears to have the dates confused.  On page 1 of the order, it refers to pleadings filed in 2011, but it then reverts to 2010 on the second page.  It appears from the order that the petition was filed in March 2010, then withdrawn, and then the petitioner filed another petition.

[5] The petitioner did not serve the State with a copy of his notice of appeal.  The copy in the respondent's possession was sent via facsimile to the State from the New Boston Police Department.  Pages 1 through 13 are part of that facsimile.  Page 14 is the state court's order.

particularly when he has received advice of counsel."  Exh. G: 2.   The petitioner then filed a notice of appeal which was declined by the state court.  Exh. G: 4.

On June 14, 2011, the petitioner filed another petition for a writ of habeas corpus.  Exh. K.  In that petitioner, the petitioner alleged that the lawyer appointed to assist him with his motion for a new trial was ineffective.  He claimed that this lawyer gave him poor advice in advising that he withdraw the motion on the grounds that his trial counsel "did everything for the defense."  Exh. K.  On February 10, 2012, the trial court (*Abramson*, J.) held a hearing.  Exh. J.  On March 5, 2012, the trial court denied the petition.  Exh. J.

On March 1, 2013, the petitioner filed an appeal from an order issued by the trial court denying another petition for writ of habeas corps.  Exh. L.  The order, issued on February 21, 2013 (*Bornstein*, J.), found that the petitioner had litigated all of his claims, except a claim that he was entitled to an interpreter.  Exh. L.  This claim, the court concluded, had been waived.  *Id*.

## II.     STATEMENT OF FACTS

### A.     Testimony At Trial

Sara Nagy (the victim) was twenty-eight years old at the time of trial in September 2008.  T1 24.  She had been the petitioner's girlfriend since August 2006.[6]  T1 24-26.  In February 2008, they were living in a first-floor apartment at 209 Pine Street in Manchester, with the victim's four children.  T1 24-26, 35.  On Sunday, February 3, 2008, the victim was in the apartment when the petitioner left at about 7:00 p.m. to watch the Super Bowl at a friend's house.  T1 27.  Shortly after he left, two friends of the victim's arrived—Christina Bean and her friend John Maiek.  T1 27, 128.

Around 9:00 p.m., the victim went to bed; Bean and Maiek were still in the living room.  T1 28.  The victim was asleep when the petitioner came home, went into the bedroom, and started hitting her with his fist and calling her a "whore."  *Id*.  He told her to get up and tell Maiek to leave; when she did not, he picked her up and threw her onto the floor.  T1 29.  She landed on her left side and felt pain "everywhere."  *Id*.  The petitioner began kicking her in the back and buttocks; when he stopped, he went into the living room, where Maiek was sleeping.  T1 30.

---

[6]  The victim testified that, as of February 2008, she and the petitioner had been living on Pine Street in Manchester "about two months," and had been dating since August "the year before." T1 25-26.  This ambiguous statement should be taken to mean August of 2006, since she also testified that the petitioner was the father of her son Sammie, who was one year old in September 2008.  T1 24-25.

9

The victim followed him, and the petitioner told her again to tell Maiek to leave, then "threw [Maiek] into the wall and threw him outside."  T1 30-31.  When the victim wanted to call the police, the petitioner took her cell phone and Bean's as well.  T1 31. He then took the victim back into the bedroom and hit her repeatedly with a can of soda. T1 31-32.  He told her not to move, and went into the living room.  T1 32-33.

The victim went into her children's bedroom.  T1 32.  She opened the window, lowered one of her daughters onto the ground outside, and told her to go upstairs, but the child did not understand; the victim herself then went out the window and went to a neighbor's apartment in another building, where she called the police.  T1 32-36.  When the petitioner became aware that she had left, he called the police and reported that the victim had left her children unattended.  T1 81.  In fact, however, Bean was still in the apartment.  T1 47-48, 89.

The first responding officer, Christopher Biron, was met by the petitioner outside 209 Pine Street, and at the same time saw and heard The victim whispering to him from the neighbor's second-floor apartment.  T1 82-83, 99.  The petitioner admitted fighting with Maiek, and arguing with the victim, but denied that the latter argument had turned physical.  T1 83-85.  When Biron told him the police had received a report of a woman jumping out a window, he admitted that the victim had done so, and showed Biron the window.  T1 86.  He said he did not know why she left by that route, since the apartment had two doors in working order.  T1 88.  Biron later interviewed Bean in the victim's apartment.  T1 89-90.

A second officer, Kelly McKenney, went to the neighbor's apartment and interviewed the victim; she described the victim as "terrified," "scared," "frantic," and "shaking."  T1 103-04.  She took pictures of some of the victim's bruises, T1 107, but could not get a picture of her left shoulder because the victim was unable to lift her shirt, T1 117-18.  McKenney later saw the victim at the hospital, where she was still crying and had a hard time speaking because of her pain.  T1 109.  After Biron conferred with McKenney, he arrested the petitioner.  T1 89.  On searching him, Biron found two cell phones.  T1 90.

EMT Walter Trachim arrived after the police, and found the victim "in a pretty significant amount of distress" and holding her left arm.  T1 57.  The victim described herself as experiencing "very sharp" pain.  T1 58.  Trachin could see that her shoulder was "out of place," and immobilized it.  *Id*.  He and his partner took her to the emergency room at Elliot Hospital, giving her pain medication while en route.  T1 59-60.

Emergency room physician John Seidner examined the victim and ordered X-rays.  T1 72-73.  The X-rays revealed an "evident" displaced fracture of the left collar bone or clavicle.  T1 73-74.  The examination also revealed "a large area of contusions involving the lower portion of her back and upper buttock."  T1 74.  The victim's arm was put in a sling, she was given pain medication, and Seidner discharged her after instructing her on how to care for the fracture and contusions.  T1 74-75.  The victim had to wear a sling for three to four weeks.  T1 41.

**B.      Other Events During Trial**

During the petitioner's cross-examination of the victim, the State objected to a question about whether the DCYF had opened a case against her as a result of the petitioner's phone call.  T1 49.  The petitioner argued that the question was relevant to The victim's "motive to lie."  *Id*.  The court sustained the State's objection, saying, "She's getting beaten.  In fearing for her safety, she left the children."  T1 50.

After the State rested, the petitioner moved to dismiss one of the second degree assault charges on grounds of double jeopardy, arguing that "the evidence used to support" the two charges was similar.  T1 137-38.  The State responded that, "if an individual injures two parts of a person's body, that's two separate crimes," and noted that one indictment alleged kicking and bruising as well as the fracture, while the other alleged only the fracture.  T1 142.  The court ruled that, "though somewhat of a redundancy in the indictments, … there is sufficient allegation of other injuries in [the second indictment] to allow it to go to the jurors."  T1 145.

## III.     ARGUMENT

### A.     General Standard of Review

"The Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA') prevents a federal court from granting an application for a writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *Knight v. Spencer*, 447 F.3d 6, 11 (1st Cir. 2006)  (internal citation and quotation marks omitted), or "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding,'" *Teti v. Bender*, 507 F.3d 50, 56 (1st Cir. 2007) (quoting 28 U.S.C. § 2254(d)(2) (2006)).

A state court decision is "contrary to" established Supreme Court authority if it results from applying a rule that contradicts governing law or is inconsistent with a Supreme Court decision in a case with essentially indistinguishable facts.  *See Aspen v. Bissonnette*, 480 F.3d 571, 574 (1st Cir. 2007).   A state court ruling is an "unreasonable application" of controlling Supreme Court authority if the state court states the correct legal principle but applies the principle unreasonably to the petitioner's case.  *Id.*

 Habeas relief is available only if the state court's decision was objectively unreasonable, not simply erroneous or mistaken.  *See Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003); *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007); *Furr v. Brady*, 440 F.3d 34, 37 (1st Cir. 2006); *see also Castillo v. Matesanz*, 348 F.3d 1, 9 (1st Cir. 2003) ("If it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application.").   The decision is objectively unreasonable if it

13

"'evinces some increment of incorrectness beyond mere error." *Abrante v. St. Amand*, 595 F.3d 11 (1st Cir. 2010) (quoting *Foxworth v. St. Amand*, 570 F.3d 414, 425 (1st Cir. 2009)).

### B.     The Claims

#### 1.     The Sentence and the 2004 Guilty Plea (Claim 2)

The petitioner first contends that his 2008 enhanced conviction and sentence for second degree assault violated his Fourteenth Amendment right to due process and his Sixth Amendment right to a fair trial, in that: (a) the statute used to enhance the charge, RSA § 173-B:9, IV(b), is ambiguous, and the trial court failed to follow the rule of lenity when it allowed the petitioner to be convicted and sentenced of second degree assault charged as a class A felony; (b) the 2004 conviction used to enhance the second degree assault charge was obtained through the petitioner's *nolo contendere* plea, which The petitioner entered neither knowingly nor voluntarily, and which resulted from ineffective assistance of trial counsel; and (c)  the petitioner's 2008 sentence for second degree assault was enhanced based on facts not decided by the jury.

#### a.     The Statute

The petitioner's claim regarding the statute is procedurally barred.  Although the petitioner could have raised the claim of unconstitutional vagueness in his direct appeal, he did not do so.  By order dated March 5, 2012, the trial court (*Abramson*, J.) found that the claim was procedurally barred.  Exh. J.

Federal courts are "precluded from reviewing state court decisions on habeas review if the decision rests on independent and adequate state law grounds." *Olszewski v. Spencer*, 466 F.3d 47, 62 (1st Cir. 2006) (internal citation and quotation marks omitted).

An "independent and adequate" state law ground exists if the state court declined to review the petitioner's federal claims because the petitioner failed to satisfy a state procedural requirement.  *Id.*  A habeas claim can be "procedurally defaulted" in this manner in two main ways.  *See Pike*, 492 F.3d at 73.  First, a habeas claim is deemed procedurally defaulted "if the state court has denied relief on that claim on independent and adequate state procedural grounds."  *Id.*

In this case, the trial court rejected the petitioner's claim about the statute.  He declined to appeal that decision.  And the post-conviction court then found the claim was procedurally barred under the rules of the state court. Exh. J.  As a result, this Court may not review the claim.

### b.      The *Nolo Contendere* Plea

On February 15, 2011, the trial court heard testimony on the petitioner's request to withdraw his 2004 plea.  The trial court found, after listening to the recording of the plea, that the petitioner's "recollection of the circumstances surrounding the entry of the plea lack[ed] credibility."  Exh. H: 7.  The trial court further found that the plea was entered "knowingly, intelligently, and voluntarily."  *Id.*  These findings are owed deference by this Court.  28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.");  *see also Sleeper*, 510 F.3d at 38 (deference applies whether the trial court or appellate court made the fact-finding).

Since the petitioner entered into the plea knowingly, intelligently, and voluntarily, counsel cannot have been ineffective.  *Cf. United States v. Weaver*, 882 F.2d 1128, 1140

(7th Cir.1989) ("Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel [under *Strickland*]."); *United States v. Williams*, 631 F.2d 198, 204 (3d Cir.1980) (no ineffective assistance existed because the defendant ultimately concurred in his trial counsel's tactical decision).

Finally, it is worth noting that, before his 2008 trial, the petitioner entered into an agreement stipulating that he had the 2004 conviction.  Doc. 18: 14.  For him to claim, nine years after entering the plea, that it was somehow defective on this record is simply disingenuous.

The petitioner has offered this Court no reason to grant habeas corpus relief on this basis.

### c.    Alleged *Apprendi* Violation

The petitioner next contends that his 2008 sentence for second degree assault was enhanced based on facts not decided by the jury.  Again, this claim is procedurally barred because it was not raised in the petitioner's direct appeal.  *See* Exh. A.  The state court has made its rule on waiver clear.  On appeal, issues that are not presented in the notice of appeal, presented in the notice of appeal but not briefed, or not adequately briefed on appeal are all deemed waived.  *See State v. Ayer*, 150 N.H. 14, 34, 834 A.2d 277, 296 (2003); *State v. Blackmer*, 149 N.H. 47, 49, 816 A.2d 1014, 1016 (2003).  The petitioner has not established cause for the failure to pursue this claim.  As a result, this Court should not consider it.

But more than that, the petitioner stipulated to the enhancement, which was the fact of his earlier conviction.  It is disingenuous to suggest that a fact to which he had stipulated now entitles him to relief from this Court.

### 2.        Claims of Bias (Claim 3)

The petitioner next claims that his  2008 conviction violated his Sixth and Fourteenth Amendment rights to due process and a fair trial, in that, motivated by racial bias, the trial court allowed the prosecutor to divide a single count indictment into multiple counts, which overcharging resulted in jury confusion, harassment of the petitioner, and unfair prejudice.

Again, this claim is procedurally barred.  The petitioner did not raise it in his direct appeal and, as a consequence, the state court would treat it as barred.  *See Ayer*, 150 N.H. at 34, 834 A.2d at 296 (2003); *Blackmer*, 149 N.H. at 49, 816 A.2d at 1016 (2003).

But even if it were not, the petitioner has not directed this Court to a part of the record that supports this claim of bias. He refers to improper, illegal and unethical behavior, Doc. 30: 5, but he does not point this Court to support in the record for the claim.  He claims that the trial prosecutor commented improperly on his guilt, Doc. 1-1: 16, but does not explain how the comments, even if improper, constitute bias.[7]

---

[7] It is not clear to the respondent that the petitioner intended this reference in the closing to support some general inference of bias, which is why the respondent raises this alleged impropriety here.  The petitioner certainly has not shown that the charging decisions were motivated by bias.  And his claims of jury confusion notwithstanding, the jury was able to reach verdicts without any indication of confusion.  *See* T2 189 (Jury deliberated for 2 hours and 23 minutes.).

Lawyers "are given latitude in the presentation of their closing arguments, and the courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." *Ceja v. Stewart*, 97 F.3d 1246, 1253-54 (9th Cir. 1996 (internal quotation marks omitted). A reviewing court should consider a prosecutor's allegedly improper statements in light of the realistic nature of trial closing arguments. The statement must be evaluated in the context of the entire trial, as well as the context in which it was made. *Boyde v. California*, 494 U.S. 370, 384-85 (1990).

The respondent does not concede that the remarks were remotely improper.  One referred to a song on the radio about domestic abuse and compared the verse to the petitioner's motive in this case.  T 2: 157.  Although it is not clear from his pleadings which of the comments on page 167 of the transcript constitute bias, it appears that it may be the following:  "I suggest to you that there are no words to describe – you can use heinous, despicable, awful."  T 2 167.  This, again, appears to be perfectly proper closing argument.

Moreover, the remarks drew no objection.  As a result, the claim of bias, as connected to these remarks, is waived because the state court will not consider claims on direct appeal that were not preserved with a contemporaneous objection in the proceeding below.  *See State v. Wong*, 138 N.H. 56, 66, 635 A.2d 470, 476-77 (1993); *State v. McAdams*, 134 N.H. 445, 446-47, 594 A.2d 1273, 1273-74 (1991).

The petitioner also contends that the prosecution was biased in that it brought more than one indictment when it could have charged the offenses as a single offense.  Doc. 24: 3.  With respect to the two charges of assault, this claim was addressed by the

state court in its opinion issued on the petitioner's direct appeal.  The court vacated the second conviction for second-degree assault.

The petitioner's claims with respect to the other charges were not raised on direct appeal and, for the reasons discussed earlier, are waived.  But even on the merits, the claim does not make sense.  The elements of the charged offenses are all different.  It is perfectly proper, under these circumstances, to bring separate charges.  *See e.g. Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). ("[T]he test to be applied to determine whether there are two offenses or only one is whether each [statutory] provision requires proof of an additional fact which the other does not.").

The petitioner has not borne his burden of showing that the charges were improper.  He has not demonstrated a basis for relief from this Court on this ground.

### 3.        Victim's False and Coerced Testimony (Claim 4):

The petitioner next contends that his constitutional rights were violated when the victim gave false testimony that was coerced by the prosecutor**.**  Again, the state court would consider this claim waived as it was not raised in the petitioner's direct appeal.

The claim is also without merit.  As a general rule, in both state and federal courts, it is the province of the jury to evaluate the credibility of witnesses and give their testimony appropriate weight.  *See United States v. Hahn*, 17 F.3d 502, 506 (1st Cir. 1994); see also *State v. Simpson,* 133 N.H. 704, 707 (1990).  The petitioner points to testimony that he finds not credible, *see* Doc. 1-1: 14-15, but the jury found otherwise. The petitioner has not given this Court a reason to believe that the victim was anything

19

other than truthful.  The fact that she was able to lift her child after receiving a brutal

beating by the petitioner does not mean that she was either lying or had been coerced.

McKenney described the victim as "terrified," "scared," "frantic," and "shaking."  T1

103-04. It may have simply been that she was so afraid that she acted despite the pain

caused by her injuries.

The petitioner has not demonstrated a reason for relief from this Court on this

ground.

### 4.     Ineffective Assistance of Trial Counsel (Claim 6):

The petitioner next contends that his trial counsel was ineffective.  This claim was

found to be procedurally barred and was dismissed with prejudice by the trial court.  See

Exh. G.  As a result, this Court may not review it.

The claim is also without merit.

"The Sixth Amendment guarantees reasonable competence, not perfect advocacy

judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).  To

establish an ineffective assistance of counsel claim, the petitioner must demonstrate two

things: (1) that "counsel's representation fell below an objective standard of

reasonableness" and (2) that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland*

*v. Washington*, 466 U.S. 668, 688, 694 (1984).

Under the first requirement, there is a "strong presumption" that counsel's tactics

fell "within the wide range of reasonable professional assistance."  *Id.* at 689.  Only if

counsel's choice of action was so unreasonable that no competent attorney would have

made it is the first prong satisfied.  *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006); *see*

20

*also Sleeper*, 510 F.3d at 38 (this deferential standard seeks to eliminate the distortion of hindsight.).

As to the second requirement, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This is a highly demanding and heavy burden." *Knight*, 447 F.3d at 15 (internal citation and quotation marks omitted.).

The petitioner claims that counsel:  (1) failed to depose all witnesses including the state's experts pretrial; (2) failed to consult with or obtain a medical expert to rebut the state's experts; (3) failed to investigate the status of the state's child protective services investigation of the victim; (4) failed to introduce evidence regarding the victim's alcoholism, drug addiction, mental illness, and frequent failure to take prescribed medication, which, if admitted, would have led the jury to question her credibility; (5) failed to object to the prosecutor's introduction of the testimony of the victim, knowing that the prosecutor had called the victim as a witness despite the prosecutor's knowledge that her testimony was false and coerced by the state; (6) failed to object to the prosecutor's expression, during summation, of his personal opinion of the petitioner's guilt; and (7) failed to investigate whether the 2004 conviction which provided the basis for enhancing the 2008 felony charge, had been obtained in violation of the petitioner's constitutional rights. Doc. 24: 3-4.

The petitioner has not, however, demonstrated how all of these claims, even if true, affected the outcome of the trial.  The evidence of guilt in this case was simply overwhelming.  The petitioner not only brutally assaulted the victim, her injuries were supported her testimony about the assault.  Even if the victim were an alcoholic and

addicted to drugs, the petitioner did not have the right to beat her.  Nor does petitioner identify who defense counsel should have called to prove these allegations.  In that regard it is worth noting that claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses' willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman,* 496 F.3d 419, 428 (5th Cir.2007).

Moreover, the victim's credibility was before the jury.  The State introduced evidence that the victim had been arrested and convicted of the crime of shoplifting in 2001.  T1 38.  To the extent that her credibility was at issue, the jury was made aware that she had been convicted of a crime involving dishonesty.

In addition, there is no evidence that the prosecutor called a witness that he knew would lie about the petitioner's assault and her resulting injuries.  To the contrary, the prosecutor had every reason to have confidence in her testimony because it was supported by physical evidence.  Although Bean did not testify, Biron did speak with her. T1 89.  It appears that the officer must have taken a statement from Bean because the conversation lasted for twenty minutes.  T1 90.  If this was the case, the prosecutor had at least Bean's statement to compare to the account given by the victim.  The petitioner's attacks on the victim's credibility notwithstanding, counsel was not ineffective for failing to pursue this avenue.  And the outcome of the trial was simply not affected by these alleged deficiencies.

The petitioner may be referring to an interview conducted by an investigator for the New Hampshire Public Defender of the victim to suggest her testimony was untruthful.  *See* Exh. I: 28-29.  In his April 2011 petition, he claimed that the victim

"fabricated stor[i]es and [was] known by the family to be a liar." Exh. I: 9. He made the allegation that the victim had received promises from the State in return for her testimony. *Id.* He then directed the court to the statement taken by the investigator. Id. The report, however, does not support the petitioner's claim. Instead, the victim told the investigator that she did not want to testify and that the petitioner had already served enough time. Exh. I: 28. She noted that the petitioner had trouble with anger and alcohol. *Id.* She added that she "'couldn't believe [the petitioner] did that to me," and offered the explanation that he had blacked out. *Id.*

The respondent points this out for two reasons. The first is that the interview does not in any way support the petitioner's contention that the victim lied or was offered anything by the State in exchange for her testimony. His contention that the State acted in bad faith is simply without support. Even his own investigator does not support his contention. The second reason that the respondent points this out to this Court is that this constitutes another example of the petitioner's total lack of candor with the state courts. That he has repeated this unsubstantiated allegation here should cast doubt on the sincerity of his other claims.

Since the petitioner is so critical of the account given by the victim, it is worth reviewing the statements he made to the police. He told Officer Biron that he had an argument "with his girl". T1 83. He said that he had wanted to watch the Super Bowl, that the victim was not interested, that he went to watch the Super Bowl with a friend, that when her returned another man was at the residence, and that he kicked the man out, throwing a detergent bottle at him as he left. T1 83. He said that he argued with the victim and that she went to bed. T1 84. He told the officer that there was "nothing

physical" and that it was "just an argument."  T1 91.  He said that he did not know why the victim had left the apartment.  T1 88.  The petitioner offered no explanation for the victim's injuries, nor did he explain why he was in possession of two cell phones.  In sum, the jury was free to reject his improbable denials and he can demonstrate no prejudice as a result of the alleged deficiencies by trial counsel.

Still, the petitioner contends that trial counsel should have deposed the State's witnesses with respect to the emergency treatment.  Because the record reflects no disagreements over discovery, it seems likely that the defense was given the medical records and statements by the EMT and emergency room physician, as well as the victim's medical reports.  As a result, counsel in all likelihood had the information that a deposition could have provided.  Further, it is hard to imagine how deposing EMT or the emergency room physician could have changed the outcome of the case.  The x-rays in this case showed an "evident" displaced fracture of the left collar bone or clavicle.  T1 73-74.  No deposition could have changed this fact.  And, because the petitioner had slammed the victim to the floor, causation was simply not in question.

The petitioner also insists that counsel should have sought expert testimony regarding the victim's injuries. An petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green,* 882 F.2d 999, 1003 (5th Cir.1989).  To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable. *See Alexander v. McCotter,* 775

F.2d 595, 602 (5th Cir.1985).  The decision whether to present a witness is considered to be essentially strategic, and "speculations as to what [uncalled] witnesses would have testified [are] too uncertain."  *Id.*

The injuries in this case were not medically complex.  While the State did call the emergency room physician, the victim herself testified to her injuries.  T1 37-38.  She was able to describe her injuries without difficulty.  It is hard to imagine what a defense expert would have added, unless it was to bolster the State's case that the victim was, in fact, badly injured.  In addition, the petitioner in this case has neither identified an expert, nor has he shown that expert testimony would have altered the outcome of the case.  As such, he has not met his burden.

The petitioner's contention to the contrary notwithstanding, it appears that trial counsel did investigate the DCYF case against the victim.  In fact, he attempted to ask the victim about it.  T1 49.  The court did not allow the questioning because the victim's decision to leave the house was a direct consequence of the petitioner's brutality.  T1 49-50.  The petitioner's assertion to the contrary is without basis.

Finally, the petitioner insists that counsel was ineffective for not objecting to the prosecutor's closing argument and for failing to investigate the 2004 guilty plea.  For reasons discussed above, the prosecutor's remarks were not objectionable.  And since the trial court specifically found that the petitioner's claims regarding the 2004 plea were "lack[ing] credibility," Exh. H: 7, the petitioner cannot show that the failure to investigate was ineffective.

In short, the petitioner has not met his burden of demonstrating either that his counsel was ineffective or that the outcome of his trial was affected as a result of those alleged deficiencies.

### 5.    Ineffective Assistance of Sentencing Counsel (Claim 7):

The petitioner next contends that sentencing counsel was ineffective when he:  (a) failed to challenge the incorrect representation in the Presentence Investigation (PSI) of the petitioner's prior criminal record and inaccuracies in the PSI regarding the petitioner's current convictions; (b) failed to provide the PSI to the petitioner prior to the sentencing hearing; (c) failed to assert as a mitigating factor during sentencing that the petitioner had received ineffective assistance of counsel at trial in that trial counsel never advised the petitioner before trial of the improbability of acquittal and the benefits of accepting a plea bargain; and (d) did not review the sentencing recommendations prepared by the petitioner's trial counsel prior to the sentencing hearing, and did not prepare or offer the sentencing court any sentencing proposal on the petitioner's behalf. Doc. 24: 4.

The petitioner points to no part of the record that supports these contentions.  His credibility with respect to his criminal record is, frankly, very weak.  For example, in one notice of discretionary appeal he states that "[t]he Court and P.S.I. chooses the appropriate sentencing rang[e] by identifying the rang[e] in the sentencing table the correspond the petitioner's total offense level and criminal, [which] in this case the

petitioner [has] no criminal record."[8]  Doc. 12-1: 53.  And yet, for purposes of his trial, as noted earlier, the petitioner stipulated to his prior conviction for Violation of Protective Order, Docket No. 04-1627, Goffstown District Court, Goffstown, NH.  *See* Doc. 18: 14-15.  To claim that he had no criminal record when he had stipulated to it for purposes of trial, simply strains credulity.

If the petitioner felt that his sentence was unjust, he had every opportunity to seek review.  *See generally N.H. Super. Ct. Sent. Rev. R.* 1-23.  The petitioner did not act to challenge his sentence within the 30-day timeframe established by the rules.  *N.H. Super. Ct. Sent. Rev.* 1.  Any claim that his sentence was unfair is therefore waived as a matter of law.

Moreover, the petitioner did not raise these claims in his first claim of ineffective assistance of counsel and he later withdrew that claim.  When he attempted to reinstate those claims, which did not include this one, his petition was dismissed with prejudice.  Exh. G.  The claim of ineffective assistance of sentencing counsel would have been procedurally barred, because the petitioner had knowledge of the claim and failed to raise it, the state courts would see the claim as procedurally barred.  *See* Exh. J (Order).  Further, his claims regarding the statute were later rejected by the trial court.  Exh.: J.  This Court has no reason to believe that the petitioner's representations in this regard have any merit.

---

[8] The respondent does not have access to the petitioner's PSI.  This representation sounds more like a description of the federal sentencing guidelines, not the state PSI and report.  The petitioner may be operating off memory in this case, but as he has not made his PSI a part of the record, it is impossible to judge the accuracy of this statement.

Further, it is clear from the petitioner's own submissions that someone prepared for sentencing very carefully.  Doc. 8: 7-13.  Indeed, it appears that his trial counsel filed a pleading asking for a specific sentence.  Doc. 13.  While is it not clear why the petitioner's representation had changed at sentencing, because he filed repeated claims against his lawyers, it may be that they had withdrawn.  If, however, trial counsel filed a memorandum in support of a recommended sentence, the petitioner cannot complain that subsequent counsel did not file a redundant memorandum.

It is not clear how the alleged ineffectiveness of his trial counsel should have been raised with the trial court at sentencing. By that point, the jury had rendered its verdict and a latter-day claim that the petitioner would have liked to engage in plea negotiations would have met with skepticism from the court.  Moreover, the allegation that trial counsel did not advise the petitioner of the benefits of pleading guilty is without support on the record and is, frankly, incredible.  The petitioner's pleadings are replete with attacks on the victim and claims that she lacked credibility.  It seems highly likely that the petitioner resisted any course except trial, particularly in light of his assertions that the victim was not to be believed.

Finally, even if the allegations that the petitioner made are true, he has not shown prejudice.  The sentence imposed was within the limits imposed by the enhancement statute. See N.H. Rev. Stat. Ann. 173-B:9, IV.  Since sentencing is essentially discretionary, the petitioner has not shown that his counsel's alleged ineffective assistance operated to his detriment.

**6.      Ineffective Assistance of Appellate Counsel (Claim 8):**

The petitioner next contends that his appellate counsel was ineffective.  Doc. 24:

4-5.   He contends that appellate counsel:  (a). failed to brief, in the state court, all issues

listed in the notice of appeal, including the trial court's misapplication of RSA § 173-B:9,

IV(b);  (b)  acted under an actual conflict of interest, based on the affiliation of the New

Hampshire Public Defender and New Hampshire Appellate Defender offices, which

precluded him from presenting meritorious claims on appeal, including the ineffective

assistance of trial counsel; and (c) failed to brief any issues upon which the state court

could reverse the petitioner's conviction and/or sentence.  Doc. 24: 4-5.

With respect to the first contention, appellate counsel "need not (and should not)

raise every nonfrivolous claim, but rather may select from among them in order to

maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288

(2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)).  Reviewing courts should

not second guess the reasonable professional judgments of appellate counsel as to the

most promising appeal issues.  *Barnes*, 463 U.S. at 754.  A petitioner may establish

constitutionally inadequate performance only by showing that appellate counsel "omitted

significant and obvious issues while pursuing issues that were clearly and significantly

weaker."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  *See also Gray v. Greer*,

800 F.2d 644, 646 (7th Cir. 1985) (Ignored claims must have been "clearly stronger than

those presented" to constitute ineffective assistance.).

The petitioner has not shown this Court how the claims that he feels should have

been pursued were stronger than those that appellate counsel did pursue.  Since he lost his

claim regarding the trial court's alleged misapplication of RSA § 173-B:9, IV(b), *see* Exh. J, in the trial court, it is hard to imagine that this was a stronger claim.  Further, when he attempted to raise the claim as grounds for post-conviction relief, the court specifically found that the trial court's ruling on the motion was correct and, as a result, the petitioner suffered no prejudice when it was not raised on appeal.  Exh. J.

He next contends that appellate counsel acted under an actual conflict of interest, based on the affiliation of the New Hampshire Public Defender and New Hampshire Appellate Defender offices, which precluded him from presenting meritorious claims on appeal, including the ineffective assistance of trial counsel.  This is incorrect as a matter of state law.  *See State v. Veale*, 154 N.H. 730, 919 A.2d 794 (2007) (noting that the Appellate Defender is only disqualified on conflict of interest grounds in cases involving an ineffective assistance of counsel claim against the Public Defender).

This contention also ignores two points.  The first is that allegations of ineffective assistance of counsel are generally brought in a collateral proceeding. *See State v. Pepin*, 159 N.H. 310, 313, 982 A.2d 364, 366 (2009) ("[C]laims of ineffective assistance of counsel based upon alleged trial errors are not procedurally barred by the failure to raise those errors on direct appeal.").  The second is that the petitioner filed just such a collateral pleading and he withdrew it.  Appellate counsel, to the respondent's knowledge, gave the petitioner no advice on the withdrawal.  Therefore, appellate counsel cannot have been ineffective on this ground because he did not render that advice.

Finally, the petitioner contends that counsel failed to brief any issues upon which the state court could reverse the petitioner conviction and/or sentence. This is simply not

true.  If the trial court had committed error in admitting the testimony about the victim's injuries, the state court may well have vacated the convictions, for while the victim described the injuries, she could not give the descriptions offered by the State's medical witnesses.  And raising the issue regarding the second conviction for second-degree assault was clearly a wise move as the petitioner prevailed.

But more to the point, the case in which the petitioner was tried was a very carefully tried case.  Combined with the overwhelming nature of the evidence against him, it may have been difficult for appellate counsel to find reasonable bases for appeal. The petitioner has not met his burden of showing that other claims were stronger.  And given the fact that the state court limits an appellant to 35 pages, *see N.H. Sup. Ct. R.* 16(11), he should also show that those "stronger" claims could have been adequately addressed in the number of pages allowed by the state court.

### 7.    Ineffective Assistance of Post-Conviction Counsel (Claim 9):

Finally, the petitioner contends that Attorney Ghazi Al-Marayati provided ineffective assistance of counsel in connection with the petitioner's motion for a new trial, in violation of the petitioner's Sixth Amendment right to counsel, in that the lawyer incorrectly informed him: (a) that trial counsel had done everything possible for his defense; and (b) that appellate counsel was providing good representation, and the incorrect information led the petitioner to withdraw the new trial motion.

The petitioner raised this claim first on June 14, 2011, after the trial court had found that he had withdrawn his claims of ineffective assistance of counsel and

dismissing the claim with prejudice.  *See* Exh. K (motion) and Exh. G (order).  The state court rejected the petitioner's appeal on September 15, 2011.[9]  *See* Exh. M.

Reaching the merits, there is no reason to conclude that this advice constituted ineffective assistance of counsel. Trial counsel, as noted earlier, conducted a vigorous defense in light of overwhelming odds.  Appellate counsel, facing similar odds, persuaded the state court to vacate the petitioner's conviction.  There was no ineffective assistance of counsel at either level and the post-conviction court would not have found otherwise.  In short, the petitioner has demonstrated no prejudice.  On this record, he is entitled to no relief.

### 8.      Incompetence to Stand Trial (Claim 10):

The petitioner did not comply with this Court's order to demonstrate exhaustion with respect to this claim and the respondent is aware of no occasion when the petitioner attempted to raise an issue of competence.  As a result, this claim should be dismissed. But even if he could demonstrate exhaustion, the trial court found that his plea in 2004 was informed.  Exh. H: 7.  This claim is simply without merit and is completely unsupported by the record.

---

[9] The respondent has been unable to locate a trial court order on this particular claim.  It appears that the petitioner did not copy the State in his notice of appeal, sending only an appendix that does not include the order, if, indeed, one exists.

### 9.  Justice Conboy (Claim 11):

Again, the petitioner did not comply with this Court's order to demonstrate exhaustion with respect to his claim against Justice Conboy. To the respondent's knowledge, all he did was file a signed order from the justice.  Doc. 36-1.  If he intended to use the earlier documents as a basis for this claim, see Doc. 27-1, he should have made this clear.

With respect to the affirmance of his conviction, no one asked for the justice's recusal before oral argument in the petitioner's direct appeal.  As a result, the claim is not only unexhausted, it is waived.

In 2013, the petitioner apparently did file a motion for recusal in one of his subsequent appeals.  The respondent notes this because, apparently made aware of her involvement in the petitioner's 2004 case, she withdrew from consideration of the 2013 case.  Doc. 27-1: 8. As a result, it seems clear that, had the petitioner made the request in his direct appeal, the justice would have complied with it.  Since no request was made, however, there is no basis in the record to grant habeas corpus relief.

## IV.  CONCLUSION

WHEREFORE, the respondent respectfully requests that the petition for a writ of habeas corpus be denied.

Respectfully Submitted,

Warden, Northern New Hampshire
Correctional Facility, Respondent.

By his attorneys,

Joseph A. Foster
Attorney General

*/s/ Elizabeth C. Woodcock*
Elizabeth C. Woodcock
Bar Number:  18837
Assistant Attorney General
Criminal Justice Bureau
33 Capitol Street
Concord, NH  03301-6397
Phone: (603) 271-3671
August 21, 2013              Elizabeth.Woodcock@doj.nh.gov

34

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I have served the petitioner, who is *pro se* by sending a copy to him at his address:  Dominic S. Ali, #81829, Northern New Hampshire Correctional Facility, 138 East    Milan Road, Berlin, NH  03570


_/s/ Elizabeth C. Woodcock_
Elizabeth C. Woodcock