**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Dominic S. Ali

    v.                                          Civil No. 12-cv-185-JL
                                                Opinion No. 2014 DNH 063
Edward Reilly, Warden,
Northern New Hampshire
Correctional Facility[1]

**<u>O R D E R</u>**

Dominic S. Ali, an inmate at the Northern New Hampshire Correctional Facility, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in which he asserts that his convictions were obtained in violation of his federal rights.  Presently before the court are:

- Ali's motion for summary judgment (doc. no. 30) and the respondent warden's objection thereto (doc. no. 34);

- Ali's motion to dismiss a state indictment (doc. no. 36), as to which the warden has not filed an objection; and

- Respondent's motion for summary judgment on all claims (doc. no. 41) and Ali's objection thereto (doc. no. 43).

For the reasons that follow, both of Ali's motions (doc. nos. 30 and 36) are denied.  The warden's motion (doc. no. 41) is denied without prejudice as to Claims 4(g) and 5, and is granted as to the remaining claims.  Ali's § 2254 petition is

---

[1]Edward Reilly, Warden of the Northern New Hampshire Correctional Facility, is the proper respondent in this action as he is Ali's custodian.  <u>See</u> 28 U.S.C. § 2243.

denied with respect to all claims other than Claims 4(g) and 5.
A briefing schedule is set forth in the conclusion of this
order with respect to Claims 4(g) and 5.

**Background**

I.   <u>State Court Proceedings</u>

Ali's § 2254 petition challenges his conviction and
sentence on second degree assault charges stemming from a
February 2008 altercation with his girlfriend, Sara Nagy.  In
its 2008 prosecution of Ali, the state used a 2004 conviction
for violating a restraining order as the basis for enhancing the
second degree assault charge to a Class A felony.  The
enhancement increased Ali's maximum possible sentence from seven
years to fifteen years by operation of N.H. Rev. Stat. Ann.
("RSA") § 173-B:9, IV(b).[2]

---

[2]RSA § 173-B:9, IV(b), provides:

    Any person convicted under RSA 173-B:9, III [of the
misdemeanor of knowingly violating a protective order],
who, within 6 years of such conviction or the completion of
the sentence imposed for such conviction, whichever is
later, subsequently commits and is convicted of one or more
offenses involving abuse may be charged with an enhanced
penalty for each subsequent offense as follows:

    . . .

       (b) If the subsequent offense would otherwise
constitute a class B felony, it may be charged as a
class A felony;

    . . . .

A.    2004 Case

In 2004, Ali was charged with violating a domestic violence protective order, and the court appointed the New Hampshire Public Defender ("NHPD"), to represent Ali on that charge. Counsel from the public defender's office represented Ali in the 2004 case. Acting upon defense counsel's advice, Ali entered a plea of nolo contendere to the charge, and received a "time-served" sentence. Ali has tried unsuccessfully to withdraw that nolo plea and to overturn his 2004 conviction in the state courts.

B.    2008 Case

In February 2008, following a late night incident with his girlfriend, Sara Nagy, which left Nagy with bruises and a broken left collarbone, Ali was arrested and charged with misdemeanor offenses and two felony second degree assault charges, one of which was enhanced to a Class A felony, under RSA § 173-B:9, IV(b), based on Ali's 2004 conviction. The trial court in 2008 appointed the NHPD to represent Ali on the charges, and NHPD Attorneys Helen Sullivan and Aileen O'Connell represented Ali prior to and at the September 25-26, 2008, jury trial.

Prior to trial, Ali, defense counsel, and the prosecutor signed a stipulation removing the fact of the 2004 conviction from the jury's consideration, and allowing the court to make a

finding on that issue.  See Doc. No. 18, at 14.  The state used a certified record of that conviction to prove its validity. See id. at 15.

At trial, Nagy testified that Ali had been out late on the night of the incident and had returned to the apartment she and Ali shared after she had gone to bed.  She testified that two friends, Johnnie and Chrissy, were staying over in another room. Nagy testified that Ali came into the bedroom, accused her of having a man over, called her a whore, hit her multiple times, and then threw her from the bed to the floor, causing her to land on her left side and feel pain "everywhere," referring to her left side.  She testified that Ali kicked her as she lay on the floor.  Ali then left the room and threw Johnnie out of the apartment.  Nagy further testified that Ali hit her repeatedly in the head with a soda can, then took her cellphone and told her not to move.  Nagy testified that, when Ali went into another room, she escaped through a first floor child's bedroom window by first putting one of her young children out the window, then jumping to the ground and running to an apartment next door.  Chrissy remained behind with Nagy's other children.

After Nagy left, Ali called the police to report that Nagy had left children unattended.  The arresting officer, Officer Christopher Biron, testified that he appeared on the scene in response to Ali's call, and that the police had received a

report of a possible domestic assault in the area.  Officer
Biron testified that, while approaching the apartment building,
he noticed Nagy whispering to him from a neighboring apartment
window.  The officer interviewed Ali and Chrissy, and also
interviewed Nagy next door.  Nagy appeared distraught and in
pain, according to Officer Biron's testimony, while Ali appeared
calm.  Officer Biron further testified that Ali said the doors
worked fine, and could not explain why Nagy would have left
through a window.  Officer Biron arrested Ali after conferring
with another responding officer, Officer Kelly McKenney, and
recovered both Ali's and Nagy's cellphones from Ali.

Officer Kelly McKenney testified that Nagy appeared
terrified and was shaking when Officer McKenney interviewed her
in the neighboring apartment.  Officer McKenney photographed
Nagy's back and the apartment where the altercation took place.

An emergency medical technician ("EMT") who examined Nagy
in the neighboring apartment testified that Nagy complained of
pain and had an apparent left shoulder injury.  The EMT and his
partner immobilized Nagy's shoulder and then transported her to
the hospital.  Dr. Seidner, Nagy's treating emergency room
physician, testified that Nagy had suffered a displaced, broken
left collarbone, and that there were marks and contusions on her
lower back.  Photos admitted into evidence showed that Nagy had
multiple bruises on her lower back and buttocks.  After the

close of the evidence and counsels' summation, the jury
convicted Ali on two misdemeanor charges and on both second
degree assault counts.

C.   Sentencing, Appeal, and Post-conviction Proceedings

After filing a sentencing memorandum on Ali's behalf,
Attorneys Sullivan and O'Connell moved to withdraw on the basis
of an undisclosed conflict of interest.  The Superior Court
appointed a non-NHPD attorney, Attorney Anthony Introcaso, to
represent Ali, and Attorney Introcaso appeared on Ali's behalf
in the sentencing hearing and also filed Ali's notice of appeal,
before moving to withdraw.  The Superior Court sentenced Ali to
concurrent one-year, stand-committed, sentences on the
misdemeanors, offset by 364 days of pretrial confinement,
followed by concurrent sentences of 3½ to 7 years, suspended,
and 5 to 10 years, stand committed, on the two second degree
assault counts.

The New Hampshire Supreme Court ("NHSC") appointed the
Office of the New Hampshire Appellate Defender ("NHAD") to
represent Ali in his direct appeal.  NHAD Attorney Paul
Borchardt filed a brief on Ali's behalf in September 2009,
arguing three issues raised in the notice of appeal, including a
double jeopardy issue that the trial court had rejected in a
pretrial order denying Ali's motion to dismiss.  In November

6

2009, the state filed its brief in the NHSC and conceded the double jeopardy issue.

In January 2010, while his direct appeal was pending, Ali moved for the appointment of new counsel, citing his belief that he had received ineffective assistance from his NHPD attorneys at trial.  Ali also requested a stay to allow him to file a motion for a new trial in the Superior Court.  The NHSC stayed Ali's direct appeal to allow him time to file a motion for a new trial in Superior Court.  See Doc. No. 9, at 9 (order in State v. Ali, No. 2009-0140 (N.H. Jan. 28, 2010)).  New counsel was not appointed at that time.

In March 2010, Ali filed a pro se motion for a new trial in the Superior Court, asserting that Attorneys O'Connell and Sullivan had provided him ineffective assistance of counsel by failing to take an interlocutory appeal of the pretrial denial of his motion to dismiss based on double jeopardy.  The Superior Court appointed non-NHPD Attorney Ghazi Al-Marayati to represent Ali with respect to the new trial motion.  Ali asserts that on Attorney Al-Marayati's advice, Ali withdrew the motion in July 2010.  See Doc. No. 9, at 15.

Thereafter, the NHSC lifted the stay in Ali's direct appeal, denied Ali's motion for new counsel, then vacated the Class B second degree assault conviction on double jeopardy grounds and affirmed the remaining convictions (including the

Class A felony).  See State v. Ali, No. 2009-0140 (N.H. Dec. 13, 2010).  Post-conviction proceedings filed by Ali pro se in the state courts have all been unsuccessful.

II.  § 2254 Petition

Ali filed a § 2254 petition in this court challenging the validity of his Class A felony conviction on multiple grounds. The court has identified the following claims in the § 2254 petition[3]:

> 1.   Ali's 2008 enhanced conviction and sentence for second degree assault violated his Fourteenth Amendment right to due process and his Sixth Amendment right to a fair trial, in that:
>
> > a.   The statute used to enhance the charge, RSA § 173-B:9, IV(b), is ambiguous, and the trial court failed to follow the rule of lenity when it allowed enhancement of a second degree assault charge to a Class A felony;
> >
> > b.   The 2004 conviction underlying the enhanced second degree assault charge was obtained through

---

[3]The court has renumbered the claims to render their sequence continuous.  The chart below clarifies how the claim numbers in this order relate to those in the May 2, 2013, report and recommendation ("May 2, 2013 R&R") (doc. no. 17), and the July 3, 2013, order ("July 2013 Order") (doc. no. 32):

| Claim Number in this Order | Claim Number in May 2, 2013 R&R (doc. no. 17) | Claim Number in July 2013 Order (doc. no. 32) |
|---|---|---|
| 1-3 | 2-4 | 2-4 |
| 4-7 | 6-9 | 6-9 |
| 8 and 9 | No equivalent | 10 and 11 |

a nolo contendere plea, which Ali entered neither knowingly nor voluntarily, and which resulted from the ineffective assistance of trial counsel; and

c.   Ali's 2008 sentence for second degree assault was enhanced based on facts not decided by the jury, in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000).

2.   Ali's 2008 conviction violated his Sixth and Fourteenth Amendment rights to due process and a fair trial, in that the trial court allowed the prosecutor to divide a single count indictment into multiple counts, which overcharging (a) was motivated by racial bias of the trial court, and (b) resulted in jury confusion and harassment of Ali.

3.   Ali's 2008 conviction violated his Sixth and Fourteenth Amendment rights to due process and a fair trial, in that his conviction was based on the victim's false testimony, which the prosecutor knew to be false, and which the state had improperly coerced from the victim.

4.   NHPD Attorneys Sullivan and O'Connell provided ineffective assistance of counsel at trial and in pretrial proceedings, in violation of Ali's Sixth Amendment rights, in that they:

a.   Failed to depose all witnesses, including the state's experts, pretrial;

b.   Failed to consult with or obtain a medical expert to rebut the state's experts;

c.   Failed to investigate the status of the state's child protective services investigation of the victim;

d.   Failed to introduce evidence regarding the victim's alcoholism, drug addiction, mental illness, and frequent failure to take prescribed medication, which, if admitted, would have led the jury to question her credibility;

e.   Failed to object to the prosecutor's introduction of the testimony of the victim, knowing that the prosecutor had called the victim as a witness despite the prosecutor's knowledge that her testimony was false and coerced by the state;

f.   Failed to object to the prosecutor's expression of his personal opinion of Ali's guilt during the prosecutor's summation; and

g.   Failed to investigate whether the 2004 conviction, which provided the basis for enhancing the 2008 felony charge, had been obtained in violation of Ali's constitutional rights.

5.   Court-appointed Attorney Introcaso denied Ali the effective assistance of counsel at sentencing, in violation of Ali's Sixth Amendment rights, in that Attorney Introcaso:

a.   Failed to challenge the materially incorrect statement of Ali's prior criminal record and inaccuracies regarding the 2008 convictions in the Pre-Sentence Investigation report ("PSI");

b.   Failed to provide the PSI to Ali prior to the sentencing hearing;

c.   Failed to assert as mitigating factors during sentencing (i) that trial counsel generally provided ineffective assistance of counsel to Ali; and (ii) that trial counsel failed to advise Ali of the improbability of

10

acquittal and the benefits of accepting a plea
bargain, in violation of Ali's Sixth Amendment
rights; and

d.   Did not review the sentencing
recommendations prepared by the NHPD attorneys
who had represented Ali at trial and did not
prepare or offer the sentencing court any
sentencing proposal on Ali's behalf.

6.   Ali received ineffective assistance of counsel
from NHAD Attorney Borchardt in his direct appeal, in
violation of Ali's Sixth Amendment rights, in that
Attorney Borchardt:

a.   Failed to brief, in the NHSC, all issues in
the notice of appeal, including the trial court's
application of RSA § 173-B:9, IV(b), to enhance a
second degree assault charge to a Class A felony;

b.   Acted under a conflict of interest, based on
the affiliation of the NHPD and NHAD offices,
which precluded him from presenting ineffective
assistance of trial counsel claims on appeal; and

c.   Failed to brief any issues upon which the
NHSC could reverse Ali's Class A felony
conviction and sentence.

7.   Attorney Al-Marayati provided ineffective
assistance of counsel in connection with Ali's motion
for a new trial, in violation of Ali's Sixth Amendment
rights in the post-conviction, pre-appeal period, in
that Attorney Al-Marayati incorrectly informed Ali (a)
that trial counsel had done everything possible for
his defense, and (b) that appellate counsel was
providing good representation, which led Ali to
withdraw the new trial motion.

8.   Ali's 2008 Class A felony conviction violated his
Fourteenth Amendment right to due process, because it

11

was enhanced by Ali's 2004 conviction that was the
product of a nolo contendere plea tendered when Ali
was not "competent" to enter a knowing, intelligent,
and voluntary plea;

9.    Ali's 2008 conviction violated his Fourteenth
Amendment right to due process, in that NHSC Justice
Carol Ann Conboy, who participated in the review of
his conviction, was biased because: (a) in March 2004,
in her former capacity as a Superior Court judge, she
had issued a temporary protective order in a domestic
violence matter involving Ali, and Ali's subsequent
conviction for violating the final protective order in
that matter (issued by a different judge in April
2004) was used in 2008 to enhance Ali's Class A felony
charge; and (b) Justice Conboy improperly denied Ali's
motion to file a pro se brief in his direct appeal of
the 2008 conviction.

## Discussion

I.    Warden's Motion for Summary Judgment (doc. no. 41)

      A.    Summary Judgment Standard

      In the context of a habeas corpus proceeding, summary

judgment is appropriate when the nonmoving party fails to show a

genuine issue of material fact that would require an evidentiary

hearing.  See Guy v. Cockrell, 343 F.3d 348, 351-52 (5th Cir.

2003); cf. Teti v. Bender, 507 F.3d 50, 62 (1st Cir. 2007)

(before granting evidentiary hearing, habeas judge "'must

[first] consider whether such a hearing could enable an

applicant to prove the petition's factual allegations, which, if

true, would entitle the applicant to federal habeas relief'"
(citation omitted)).

      B.   Habeas Standard of Review

    Federal courts reviewing claims asserted in § 2254
petitions apply a highly deferential standard of review to state
court findings and legal conclusions.  Federal habeas relief is
not available as to any claim adjudicated on the merits in state
court, unless the state court's legal conclusions or application
of legal standards to settled facts "resulted in a decision that
was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme
Court of the United States."  28 U.S.C. § 2254(d)(1); see also
Robidoux v. O'Brien, 643 F.3d 334, 338 (1st Cir. 2011).  This
court applies a de novo standard of review to claims that were
raised in the state court, but left unresolved by those courts.
See Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007); see also
Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006).

    If the issue is one of fact, the habeas court must "apply a
presumption of correctness to the [state] court's factual
findings and also examine whether there has been an unreasonable
determination of the facts in light of the evidence presented in
the state court proceeding."  John v. Russo, 561 F.3d 88, 92
(1st Cir. 2009); see also 28 U.S.C. § 2254(d)(2) (to prevail,

petitioner must show that state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"); 28 U.S.C. § 2254(e)(1) (petitioner must offer "clear and convincing" evidence to rebut presumption that state court fact findings are correct).

> C.    Claims Relating to 2004 Conviction (Claims 1(b) and 8)

Through Claims 1(b) and 8, Ali seeks to challenge the validity of his 2008 enhanced Class A felony conviction by collaterally challenging the validity of the 2004 conviction that resulted in the enhancement of the 2008 charge.  A petition for federal habeas relief under 28 U.S.C. § 2254 does not provide Ali with a remedy for such claims.  See Lackawanna Cnty. Dist. Att'y v. Coss, 532 U.S. 394, 403-04 (2001) ("once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid," and "[i]f that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained").

Ali challenged the validity of the 2004 conviction in state court post-conviction proceedings, but did not succeed.[4]  This court therefore regards the 2004 conviction as "conclusively valid." Lackawanna, 532 U.S. at 401.  No exception to the Lackawanna rule applies in Ali's case.  Accordingly, Ali cannot challenge the validity of the 2004 conviction or the enhancement of his 2008 sentence based on the alleged invalidity of that conviction, in this action, and the warden's motion for summary judgment on Claims 1(b) and 8 is granted.

### D.   Procedural Default

Respondent argues that certain claims in the § 2254 petition were procedurally defaulted.  "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012).  Respondent "bears the burden 'of persuading the court that the factual and legal prerequisites of a default . . . are present.'" Pike, 492 F.3d at 73 (citation omitted).

---

[4]See, e.g., Doc. No. 36-1, at 10-11, 28, and 29-30.

### 1.   Claim 1(a)

The Superior Court, in a March 2012 order, determined that Ali had procedurally defaulted Claim 1(a).  That court cited pertinent authority demonstrating that its ruling was based on an independent and adequate state procedural rule.  Applying the relevant standard, this court concludes that Claim 1(a) is procedurally defaulted.

### 2.   Claims 4 and 5(c)

The Superior Court in the March 2012 order declared that Claims 4 and 5(c) were procedurally defaulted, upon finding that the same claims had been rejected as waived in a June 2011 order on a post-conviction motion in Ali's criminal case, and that no new issues had been asserted.  See Doc. No. 41-2, at 10 and 66. The underlying June 2011 order, which the NHSC declined to review, deemed Ali's claims waived because Ali had asserted an ineffective assistance of trial counsel claim in the March 2010 pro se motion for a new trial and had then withdrawn that motion upon Attorney Al-Marayati's advice.  See Doc. No. 41-2, at 10 ("At some point the defendant must be bound by his prior decisions, particularly when he has received the advice of counsel.  He has now reached that point.").

The June 2011 order does not cite any authority for the waiver rule that it applied to Ali.  The March 2012 order simply

16

followed that earlier ruling as to the waiver issue, without citing any other authorities on that issue.  The warden has not shown that there is an established state rule, consistently applied to bar prisoners from subsequently pursuing petitions asserting ineffective assistance of counsel claims, if they have previously filed, then withdrawn upon counsel's advice, a new trial motion asserting one ineffective assistance of counsel claim.  In other words, the warden has not carried his burden of showing that the waiver rule at issue is an independent and adequate state rule of decision.  This court thus concludes that Claims 4 and 5(c) are not procedurally defaulted.

### 3.   Claims 1(c), 2, and 3

Respondent further argues that Claims 1(c), 2, and 3 must be deemed procedurally defaulted.  A claim may be deemed procedurally defaulted "if it was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred." Pike, 492 F.3d at 73 (citation omitted).  Claims 1(c), 2, and 3 were neither preserved at trial, nor raised in the direct appeal, and would thus have been deemed procedurally barred by the state courts. See State v. Blackmer, 149 N.H. 47, 48-49, 816 A.2d 1014, 1016 (2003).  Claim 2, relating to overcharging, would also have been held by the state courts to be procedurally defaulted, if raised there, as

17

that claim was not briefed in Ali's direct appeal.  See id.
Those claims are therefore procedurally defaulted in the instant
petition.  See Pike, 492 F.3d at 73.

      4.  Claim 9

Respondent's final contention on procedural default is that
Claim 9 is defaulted because Ali did not file a timely motion
for disqualification of NHSC Justice Conboy in the direct appeal
of his conviction, as required by NHSC Rule 21A.  Rule 21A
requires an appellant to file a notice of disqualification along
with the notice of appeal, and further provides that without a
showing of good cause for untimely filing, the right to request
recusal is waived.

The warden has cited no law to support his claim of
procedural default.  NHSC Rule 21A does not directly govern the
question of whether judicial bias claims, regarding NHSC
justices, asserted for the first time in post-conviction
proceedings, would necessarily be barred because the petitioner
did not file a timely Rule 21A motion in the NHSC.  The warden
has therefore failed to carry his burden of establishing that
Claim 9 would have been barred, had it been asserted in the
state courts.[5]

_____

    [5]For reasons set forth in this order, the court finds that
Ali did not exhaust his state court remedies on Claim 9.

5.    Cause and Prejudice

a.    Standard

A federal court cannot review a procedurally defaulted claim in a § 2254 petition, unless the petitioner demonstrates either "actual innocence," or "cause" and "prejudice." Costa v. Hall, 673 F.3d 16, 25 (1st Cir. 2012) (citation omitted).  Cause "'ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  Id. at 26.  To prove prejudice, a petitioner must demonstrate that the violations of federal law "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. (emphasis in original, citation omitted).

b.    Claim 1(c)

Liberally construing Ali's petition, this court finds no basis upon which Ali may be deemed to have asserted cause for the procedural default of Claim 1(c).  To the extent Ali seeks to argue cause by pointing in this case to trial counsel's provision of ineffective assistance of counsel, he cannot rely on that assertion of cause because he has not exhausted his state court remedies on a Sixth Amendment ineffective assistance

of counsel claim based on the failure to preserve an Apprendi issue.  See Lynch v. Ficco, 438 F.3d 35, 46 (1st Cir. 2006).

Ali has also failed to show prejudice, insofar as Claim 1(c) lacks merit.  Apprendi does not prevent a sentence enhancement based on the fact of a prior conviction, even if that fact is not decided by the jury.  See Apprendi, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").  Apart from the fact of the 2004 conviction, Ali has pointed to no facts that were removed from the jury's consideration in his criminal case.  Accordingly, Claim 1(c) does not provide grounds for federal habeas relief, and the court grants summary judgment for the respondent on Claim 1(c).

c.   Claims 1(a), 2, and 3

Claims 4 and 6, asserting ineffective assistance of counsel, are construed liberally as asserting cause for the procedurally defaulted claims, specifically: Claim 6, as to Attorney Borchardt, is asserted as cause for the default of Claims 1(a) and 2 in the NHSC; and Claim 4, as to trial counsel, is asserted as cause for the default of Claim 3 at trial.  Ali's petition thus nests together multiple layers of ineffective

20

assistance of counsel claims, to show cause for procedural defaults of Claims 1(a), 2, and 3, and to show independent bases for granting federal habeas relief, as to Claims 4-7.  The analysis of all of these claims is linked, because a petitioner who cannot show prejudice to establish a claim under Strickland v. Washington, 466 U.S. 668 (1984), also cannot meet the "cause and prejudice" standard to excuse a procedural default.  Lynch, 438 F.3d at 49-50.

     E.   Ineffective Assistance of Counsel

       1.   Standard

Under Strickland, a petitioner claiming ineffective assistance of counsel must show both that counsel's representation fell below an objective standard of reasonableness, and that prejudice resulted.  See Strickland, 466 U.S. at 687-88.  Deficiency is found "'only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010).  "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," requiring the petitioner to "overcome the presumption that . . . the challenged action might be considered sound trial strategy." Id.

The court in the prejudice analysis must consider the totality of the evidence before the jury.  Id. at 695.  "Taking the . . . findings [unaffected by the errors] as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."  Strickland, 466 U.S. at 696.

### 2.  Trial Counsel (Claim 4)

Ali has asserted four types of Strickland trial counsel claims:  (1) the failure to investigate the validity of a prior conviction as a ground for collaterally challenging the 2008 Class A felony charge; (2) the failure to engage a medical expert and depose the state's experts; (3) the failure to object to alleged instances of prosecutorial misconduct (including Claim 3 here); and (4) the failure to introduce evidence of the victim's mental health, drug and alcohol abuse, and frequent failure to take medication to impeach her testimony.  Where there is no state court decision, this court's review of these claims is de novo, based on the state court's record.

### a.  Failure to Impeach

Ali claims that Nagy abused drugs and alcohol, frequently failed to take prescriptions, and had a mental illness, and that

trial counsel's failure to introduce that evidence to impeach the victim was substandard and prejudicial.  Nothing in the state court record, however, substantiates that such evidence exists.

Furthermore, the information Ali cites as to mental illness, prescription medications, and alcoholism, would not be deemed relevant for impeachment purposes, without additional information showing that Nagy abused alcohol in the relevant time period, and that her unspecified mental illness and frequent failures to take medications could have had an impact on her veracity or ability to recall facts.  See State v. McGill, 153 N.H. 813, 817, 903 A.2d 1016, 1021 (2006) ("mental instability is only relevant to credibility when, during the time of the events in question, the witness exhibited a disposition to lie or hallucinate, or suffered from a severe mental illness that dramatically impaired his ability to perceive and tell the truth"); see also 1-12 Weinstein's Evidence Manual § 12.01(3)(b) & (c); Roger Park & Tom Lininger, The New Wigmore on Evidence:  Impeachment and Rehabilitation, § 8.2.2 (2012).  Cf. McGowan v. Green, No. 03CIV.5400LAPHBP, 2010 WL 1141162, at *3 (S.D.N.Y. Mar. 25, 2010) ("[a]lcoholism, without more, is not admissible to impeach"); United States v. Jackson, No. 94-40001-01/02-SAC, 1994 WL 539292, at *5 (D. Kan. July 25, 1994) (excluding evidence of alcoholism where counsel

failed to show that alcohol abuse occurred at relevant time).
By the same token, evidence of unspecified drug abuse, without
additional information, cannot be now deemed to have had an
impact on Nagy's memory or her ability to perceive or recount
events accurately.  See 1-12 Weinstein's Evidence Manual
§ 12.01(3)(b).  A competent lawyer could conclude that
attempting to introduce the evidence cited by Ali would be
fruitless because, without more, it would not be admitted.

### b.   Failure to Investigate

#### i.   Prior Conviction (Claim 4(g))

Ali asserts that defense counsel's representation at trial
was incompetent because he had told Attorneys Sullivan and
O'Connell that his 2004 nolo contendere plea had not been
knowing and voluntary, and that he had received incompetent
advice in plea bargaining from his NHPD defense counsel in 2004.
Ali agreed to a nolo contendere plea in that case, and received
a time-served sentence, relying, he asserts, on counsel's
explanation that a nolo plea meant "nothing."  Ali's claim with
respect to his 2008 counsel is entitled to de novo review, as
there is no state court decision on the question.

The deferential § 2254 standard applies here, however, as
to the validity of the 2004 conviction, as Ali did litigate that
question in post-conviction proceedings in the state courts.

24

The Goffstown District Court held an evidentiary hearing on Ali's motion to withdraw the plea on February 15, 2011.  After reviewing a recording of the September 28, 2004, hearing, that court issued an order on March 3, 2011, finding that Ali's claims were not credible.  See Doc. No. 41-2, at 19.

Two transcripts relevant to this court's consideration of Claim 4(g) have not been provided to the court in this matter: (1) the transcript of the September 28, 2004, plea hearing, in the 2004 case; and (2) the transcript of the February 15, 2011, evidentiary hearing on Ali's motion to withdraw the plea. Pursuant to this court's authority under Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts, this court directs the respondent to furnish those transcripts to this court.  The court denies the warden's motion on Claim 4(g), without prejudice to refiling after respondent has filed those transcripts, as specified in the conclusion of this order.

## ii.  Child Protective Services (Claim 4(c))

Ali asserts that defense counsel's representation was incompetent because counsel failed to investigate the status of a state child protective services ("DCYF") case involving Nagy and her children.  The record shows that defense counsel sought to elicit testimony from Nagy at trial about a DCYF case that

was open in August 2008, to support the theory that Nagy had a
motive to lie in February 2008 to shift responsibility to Ali
for her decision to abandon her children.  The trial court
sustained a relevance objection, and the NHSC found no error in
that ruling, noting that defense counsel had not asserted that
the case was open prior to the incident, and upon finding that
there was undisputed evidence that Nagy's friend remained behind
in the apartment.  See State v. Ali, No. 2009-0140 (N.H. Dec.
13, 2010), slip op. at 2.  Without pointing to any record
evidence other than defense counsel's ambiguous proffer,[6] Ali
asserts that there was a DCYF case pending on the night of the
incident, and that trial counsel's failure to investigate
precluded the introduction of that evidence to impeach Nagy by
showing a motive to lie.

Assuming error on the part of defense counsel, and noting
that the failure to investigate may have had an impact on the
trial court's exclusion of the evidence, this court examines the
issue of prejudice under Strickland.  The absence of evidence on
the DCYF case did not prevent defense counsel from arguing that

---

[6]Responding to the prosecutor's relevance objection, defense
counsel proffered:

There is a motive to lie on [sic] the State.  She left her
children at home alone.  The defendant called the police.
At the time, I understand, that she did have a case opened
with DCYF and that she was under supervision by the
Department of Children and Families.

Nagy had a motive to lie, as the evidence showed that the police came to the apartment in response to Ali's call that Nagy had left children unattended.  The evidence as a whole, however, included substantial, independent evidence corroborating the victim's testimony, as well as undisputed evidence that Chrissy remained behind in the apartment when Nagy fled.  This court concludes that Ali has not shown that counsel's failure to investigate the status of the DCYF case was prejudicial.

### c.   Failure to Depose/Hire Experts

Ali has asserted that counsel was incompetent in failing to depose witnesses including the EMT and the physician pretrial. The testimony of the EMT and physician was, in general, descriptive of their observations regarding Nagy's condition. The physician's testimony on his diagnosis regarding Nagy's injuries was straightforward, and the diagnosis was not disputed.  Defense counsel successfully elicited testimony from the EMT regarding his observations and the omissions from his case report that defense counsel argued in summation undermined the credibility of Nagy's testimony, as well as helpful opinion testimony from the physician at trial regarding the limitations imposed by Nagy's injuries, without eliciting any damaging testimony or opinions about causation that could have undermined the defense theory of the case.  Ali's arguments about the

potential benefits of a pretrial deposition of the EMT, the physician, and other witnesses are speculative.  Therefore, Ali has not shown prejudice resulting from the failure to depose them.  Ali has thus failed to establish a Strickland claim on this ground.

Ali further asserts that he received substandard representation because trial counsel did not hire medical experts.  Ali has not rebutted the presumption, however, that the decision to forego hiring experts was a reasonable strategy, see Dugas v. Coplan, 428 F.3d 317, 328-29 (1st Cir. 2005) ("reasonably diligent counsel are not always required to consult an expert as part of pretrial investigation in a case involving the use of expert witnesses by the state").  This case did not involve any complex medical evidence, and there was no dispute regarding the nature of the diagnosed injuries.  Trial counsel successfully elicited, through cross-examination, the emergency room physician's opinion that a person with a broken collarbone would have difficulty lifting, to support the defense theory about the cause of Nagy's injuries.  Considering the totality of the evidence showing guilt, Ali has not shown how a medical expert's opinions would have altered the result.

d.   <u>Failure to Object to Misconduct</u>

i.   <u>Nagy's Testimony (Claims 3 and 4(e))</u>

Ali asserts that defense counsel's failure to object to the prosecutor's introduction of Nagy's testimony, knowing it was false and coerced by the state, violated his right to the effective assistance of counsel.  Ali further asserts that the prosecutor's knowing reliance on perjured, coerced testimony (Claim 3 here), was prosecutorial misconduct.  That claim, however, was procedurally defaulted when defense counsel failed to object to the testimony at trial.

Ali points to no record evidence to support his claim that the prosecutor knowingly relied on perjured testimony, or that Nagy's testimony was coerced by the state's threat to take away her children, and he offers no affidavit or other proof of those facts.  Where there is no evidence to support a prosecutorial misconduct objection asserting that the victim's testimony was false and coerced, trial counsel's decision not to object to such testimony was not objectively unreasonable.  Claim 3, asserting such charges of prosecutorial misconduct, is purely speculative.  Therefore, Ali has not established a <u>Strickland</u> claim based on counsel's failure to object to Nagy's testimony, and he has not shown cause and prejudice for the procedural default of Claim 3.  Accordingly, the warden's motion for summary judgment is granted on both Claims 3 and 4(e).

ii.   Summation (Claim 4(f))

Ali contends that the prosecutor made improper remarks, expressing his personal opinion of Ali's guilt in his summation. That summation began with a reference to a song about domestic violence, and the prosecutor's comparison of the lyrics to Ali's motive:

> . . . I heard a song on the radio.  And I think some of the words are absolutely appropriate for what this case is all about. . . .  It goes like this:  "Do you feel like a man when you push her around?  Do you feel better now as she falls to the ground?"  That's what this case is about – domestic assault, domestic violence . . . .

Towards the end of the summation, the prosecutor stated:

> Sadly, he treated Sara Nagy like a rag doll, like a punching bag – that's what she was that evening – and just threw her on the floor like a piece of trash. . . . Who does that to another person?  I suggest to you that there are no words to describe – you can use heinous, despicable, awful.  There's no one word to describe or suggest to you what he did to her that night, because it is just so awful . . . .

Defense counsel did not object to any part of the summation.

"[A] prosecutor may draw reasonable inferences from the facts proven and has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge them to draw inferences of guilt from the evidence." State v. Demond-Surace, 162 N.H. 17, 26, 27 A.3d 793 (2011) (quotation marks omitted).  However, "[i]t is well settled that it is improper for prosecutors to profess to the jury their personal opinions as to the credibility of a witness or the guilt of the

30

accused." State v. Bujnowski, 130 N.H. 1, 4, 532 A.2d 1385, 1387 (1987) (citing United States v. Gonzalez Vargas, 558 F.2d 631 (1st Cir. 1977)).  Assessing the prosecutor's statements, the court cannot now find that the prosecutor did more than describe facts that were reasonable inferences from the evidence adduced at trial.

Even if the prosecutor had overstepped, however, the decision not to object to a closing argument is frequently a question of strategy.  A competent defense lawyer may choose not to object to avoid drawing attention to a particular remark. Further, even if Ali could demonstrate that the failure to object to the summation was error, Ali has not demonstrated prejudice resulting from counsel's failure to object, where the trial court instructed the jury that closing arguments were not evidence.  Therefore, the warden's motion for summary judgment is granted on Claim 4(f).

### 3.   Sentencing Counsel (Claim 5)

Ali asserts that Attorney Introcaso's representation in the sentencing proceeding was ineffective because, among other things, Attorney Introcaso: did not challenge inaccuracies about his criminal record in the PSI; did not review a sentencing memorandum prepared by Ali's trial counsel; and did not offer a sentencing proposal on Ali's behalf.  This court notes that the

court in the sentencing proceeding had before it a memorandum
filed by Ali's prior defense attorneys.  See Def.'s Mem. on
Issue of Sent'g, at 4, State v. Ali, No. 08-S-858-865 (N.H.
Super. Ct., Hillsborough Cnty., Dec. 2, 2008).

Neither the February 2, 2009, sentencing hearing
transcript, nor the PSI, are part of this court's record at this
time.  This court requires access to the sentencing hearing
transcript to resolve Claim 5.  Accordingly, the dispositive
motions filed by Ali and the respondent are denied without
prejudice to refiling after the sentencing hearing transcript is
made part of this court's record, in accordance with the
directions set forth in the conclusion of this order.

### 4.  Appellate Counsel (Claim 6)

Ali asserts that he was denied the effective assistance of
appellate counsel because NHAD Attorney Borchardt represented
Ali while operating under a conflict of interest.  Ali further
asserts that Attorney Borchardt provided deficient appellate
representation by failing to brief all of the issues raised in
Ali's notice of appeal, including Claims 1(a) and 2(b) and a
Strickland trial counsel claim.  Ali has also asserted appellate
counsel's ineffective representation as cause for the procedural
default of Claims 1(a) and 2(b).

a.   Conflict of Interest (Claim 6(b))

To support his conflict of interest claim as to appellate counsel, Ali asserts that Attorney Borchardt represented Ali even though Ali had asserted a Strickland claim as to his two NHPD trial lawyers, Attorneys Sullivan and O'Connell, and that Attorneys Sullivan and O'Connell had moved to withdraw and have new counsel appointed because of an undisclosed conflict of interest that disqualified the NHPD from representing Ali during the sentencing proceeding.  See State v. Etienne, 163 N.H. 57, 90, 35 A.3d 523, 549 (2011) (NHAD and NHPD attorneys are members of "the same 'firm'" for purposes of assessing conflict issues under rules of professional responsibility (citation omitted)).

> If . . . a defendant can show that his attorney "actively represented conflicting interests" in breach of the attorney's duty of loyalty, and if the defendant can show that this "actual" conflict of interest "adversely affected [the] lawyer's performance," then the stricter prejudice showing required by Strickland does not apply. . . . [T]he Supreme Court [has] emphasized that an actual conflict of interest does not result in an automatic reversal; in almost all cases, some showing of an adverse effect is still required.  Lesser ("potential") conflicts of interest can also be the basis of an ineffective assistance claim, but the more stringent prejudice prong of Strickland then applies.

Teti, 507 F.3d at 55 (citations omitted).

Ali has asserted in this court that he does not know why NHPD counsel identified a conflict of interest after trial.  See Doc. No. 41-2, at 29-30.  Even without that information, however, the court now finds that Attorney Borchardt did not

actively represent conflicting interests while serving as Ali's counsel in the NHSC.  The NHAD was appointed to represent Ali in the NHSC after the notice of appeal had been filed.  The notice of appeal, filed by non-NHPD Attorney Introcaso, did not include a claim of ineffective assistance of Ali's trial counsel.  Ali asserted a Strickland claim as to Attorneys Sullivan and O'Connell for the first time in the NHSC in January 2010, in a pro se motion filed in his direct appeal, seeking the appointment of new appellate counsel.  The NHSC then stayed the direct appeal to allow Ali time to file a motion for a new trial in the Superior Court, based on his claim of ineffective assistance of trial counsel.  Non-NHPD Attorney Al-Marayati was appointed to represent Ali in the Superior Court with respect to his new trial motion.  Ali, through and upon the advice of Attorney Al-Marayati, withdrew the new trial motion in Superior Court in July 2010 before the NHSC lifted the stay.  Therefore, Attorney Borchardt never represented conflicting interests while representing Ali, in light of Ali's withdrawal of his ineffective assistance of counsel claim.

Moreover, Attorney Borchardt's failure to brief ineffective assistance of counsel in the direct appeal does not manifest that an actual conflict of interest adversely affected his representation of Ali.  That Sixth Amendment issue was not included in the notice of appeal filed by Attorney Introcaso,

but was not waived for having been omitted from the appeal.  The NHSC has declared its strong preference for having such claims raised only after a record has been developed through post-conviction proceedings, see State v. Thompson, 161 N.H. 507, 528, 20 A.3d 242, 258 (2011), and towards that end, allows such claims to be raised in later proceedings even if omitted from the direct appeal, see id.  The failure to brief the issue in the direct appeal did not prejudice Ali and does not manifest that an actual conflict of interest adversely affected Attorney Borchardt's representation of Ali.

b.   Failure to Brief Remaining Issues

Ali asserts that Attorney Borchardt's decision not to brief issues on appeal was objectively unreasonable and prejudicial. The issues that were not briefed in Ali's appeal include:

- a claim challenging the trial court's application of RSA § 173-B:9, IV, to enhance one of the felony charges; and

- a claim that the trial court erred in failing to curb the prosecutor's discretion to prevent overcharging as to the two second degree assault indictments, to avoid harassment, jury confusion, and unfair prejudice.

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). To show prejudice, petitioner must show "a reasonable

probability that, but for his counsel's unreasonable failure to file a merits brief [on the issue], he would have prevailed on his appeal."  Id. at 285.

### i.   RSA § 173-B:9, IV(b)

The Superior Court, in its March 2012 order denying Ali's state habeas petition, rejected a Strickland claim based on appellate counsel's failure to brief the enhanced charge issue. See Doc. No. 41-2, at 67.  The court in that March 2012 order found no prejudice resulting from counsel's foregoing that issue in the NHSC, because it found no error in the underlying order construing RSA § 173-B:9, IV(b), to apply to Ali's case.  See id. (citing State v. Ali, No. 08-S-0858-0865 (N.H. Super. Ct., Hillsborough Cnty., N. Div., Sept. 2, 2008)[7]).

Applying the proper deferential standards of review to the state court's findings and rulings relating to the federal issues raised there, this court notes that the Superior Court in March 2012 articulated and applied the proper Strickland prejudice standard when it rejected the failure-to-brief claim for lack of prejudice.  Where the NHSC previously construed the same terms in a similar statute the same way that the trial court construed it in the September 2, 2008, order, see State v.

---

[7]The September 2, 2008, order is reproduced in the conventionally-filed portion of the record here, at pages 13-17 of Ali's direct appeal of his 2008 conviction.

Balukas, 155 N.H. 377, 380, 924 A.2d 381, 383 (2007), this court
accepts as reasonable and entirely consistent with established
Supreme Court precedent, the March 2012 Superior Court order
finding of no prejudice in counsel's failure to brief the
statutory claim.  Cf. Smith, 528 U.S. at 288 ("'only when
ignored issues are clearly stronger than those presented, will
the presumption of effective assistance of counsel be overcome'"
(citation omitted)); see also Moore v. Mitchell, 708 F.3d 760,
776 (6th Cir.) ("a petitioner cannot show that appellate counsel
was ineffective for failing to raise a claim on appeal if the
underlying claim itself lacks merit"), cert. denied, 134 S. Ct.
693 (2013).  Accordingly, Ali's failure-to-brief claim relating
to the trial court's enhancement of Ali's offense does not
warrant federal habeas relief, and also fails to excuse the
procedural default of Claim 1(a).  The warden's motion for
summary judgment on Claims 1(a) and 6, relating to the failure
to brief the statutory claim, is therefore granted.

ii.  Overcharging (Claim 2)

Similarly, this court finds no prejudice warranting relief
in Attorney Borchardt's failure to brief the overcharging issue
on appeal.  Ali points to no evidence in the state court record
to support his claims of racial bias, jury confusion,
harassment, and unfair prejudice, and therefore has not shown

37

that Claim 2 was clearly stronger than the issues briefed by Attorney Borchardt.

Deferring to the relevant state court findings of fact and conclusions of law on the "same evidence" double jeopardy claim conceded by the state, see State v. Ali, No. 2009-0140 (N.H. Dec. 13, 2010), slip op. at 2, this court finds no support in the record for Ali's contention that allowing both indictments to go forward enabled the jury to consider evidence that would otherwise have been excluded.  Claim 2's assertion of the trial court's racial bias motive for allowing overcharging is purely speculative, as is the claim's assertion that overcharging resulted in jury confusion, harassment, and unfair prejudice. Claim 2 thus lacks merit.

Accordingly, this court concludes that Ali has not shown that Attorney Borchardt's decision to forego briefing that claim was objectively unreasonable, or prejudicial, for the purposes of establishing a Strickland claim, or to excuse the Claim 2 procedural default.  The warden's motion for summary judgment is granted on both Claim 2 and Claim 6 to the extent that it is based on Attorney Borchardt's neglect of Claim 2.

### iii. Remaining Failure-to-Brief Claims

Ali further challenges Attorney Borchardt's failure to brief: (1) the trial court's evidentiary rulings allowing the

victim to testify to hearsay concerning her broken collarbone,
and allowing an officer to testify to the victim's out-of-court
statements to counter the claim that the witness's statements
have been inconsistent, and (2) the sufficiency of the evidence
on a false imprisonment charge.  In light of the abundant
alternative evidence on the victim's injuries, the trial court's
limiting instructions relating to the officer's testimony, and
the overwhelming evidence of guilt, this court concludes that
the likelihood of a successful appeal on those unbriefed issues
was nil.  This court further accepts as reasonable in light of
the state court record, and as neither contrary to nor an
unreasonable application of federal law, the trial court's
findings and conclusions with respect to the sufficiency of the
evidence on the false imprisonment charge.

Ali has not shown that the issues not briefed were clearly
stronger than those briefed, and he has thus failed to establish
a Strickland appellate counsel claim based on the abandonment of
those issues.  Therefore, appellate counsel's representation did
not fall below the Strickland standard.  Claim 6 provides
grounds neither to grant habeas relief, nor to excuse Ali's
procedural defaults.  The warden's motion for summary judgment
is granted on those claims.

5.   Post-Conviction Counsel (Claim 7)

Judge McCafferty, in her May 2, 2012, report and recommendation (doc. no. 17) in this matter, noted the unsettled state of the law on the issue of whether a claim for federal habeas relief may be based on ineffective assistance of counsel in proceedings concerning a motion for a new trial, filed while the direct appeal is stayed.  See May 2, 2012, Report and Recommendation (doc. no. 17), at 12 (citing, inter alia, Marshall v. Rodgers, 133 S. Ct. 1446, 1450-51 (2013) (assuming without deciding that post-trial, pre-appeal motion for new trial is critical stage of prosecution)).  The magistrate judge at that time determined that this issue should not be resolved without the benefit of briefing by the parties, and this court accepted that recommendation by directing the respondent to answer Claim 7.  See Order (May 23, 2012) (approving May 2 Report and Recommendation (doc. no. 17)).  Neither party has chosen to brief this issue on summary judgment.

Assuming that a claim challenging post-conviction counsel's performance could be grounds for federal habeas relief, Claim 7 fails here.  Attorney Al-Marayati's advice on whether Ali should withdraw the motion for a new trial must be considered in light of the particular claim asserted in that pro se motion:  trial counsel's failure to file an interlocutory appeal of the Superior Court's orders allowing two charges based on the same

40

evidence to go to the jury.  Defense counsel had moved to
dismiss one of the indictments after the state's opening, and
renewed that motion at the close of the state's case.  The trial
court denied both motions to dismiss.

At the time Ali sought to assert the claim of ineffective
assistance of trial counsel, the NHSC appeal had been stayed
because of the new trial motion.  Attorney Borchardt had already
filed a brief on Ali's behalf, and the state, in its brief, had
already conceded the double jeopardy issue.  A competent post-
conviction counsel may conclude that it would be prudent to
defer the collateral challenge until after the underlying double
jeopardy issue is resolved in the direct appeal, and so advise
the client to withdraw that claim.

Furthermore, Ali has not shown that Attorney Al-Marayati's
representation was objectively unreasonable, with respect to
counsel's general assessment of trial counsel's and appellate
counsel's representation, and its effect on the withdrawal of
Ali's motion for a new trial.  Ali has not shown that he would
have prevailed on any claim of ineffective assistance of counsel
in a post-conviction proceeding in the state courts, and he has
not prevailed on any such claim that this court has yet
addressed.  A competent post-conviction counsel could conclude
from reviewing the record that trial and appellate counsel had

41

not provided ineffective assistance of counsel.  Therefore, the
warden's motion for summary judgment is granted on Claim 7.[8]

    F.    <u>Claim 9</u>

    Applying the standard set forth previously in this case,
<u>see, e.g.</u>, Report and Recommendation (doc. no. 6) (Oct. 10,
2012), this court finds that Claim 9, asserting that New
Hampshire Supreme Court Justice Conboy should have recused in
Ali's appeal, was not exhausted in the state courts.  The
failure to exhaust does not preclude further consideration of
this claim, however, in that a habeas claim may be denied on the
merits notwithstanding the failure to exhaust state court
remedies.  28 U.S.C. § 2254(b)(2).  A de novo standard of review
applies to Claim 9, as there is no state court decision on the
merits of that claim.  See Pike, 492 F.3d at 67.

    The Due Process Clause requires recusal if a judge is
interested in the outcome of a particular case, or if there are
other circumstances "'in which experience teaches that the
probability of actual bias on the part of the judge or
decisionmaker is too high to be constitutionally tolerable.'"
Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 877 (2009)

---

[8]Two claims remain in this case, Claims 4(g) and 5.  Claim 5
concerns Attorney Introcaso's representation of Ali at
sentencing.  Ali has not asserted that Attorney Al-Marayati
provided any advice as to the quality of sentencing counsel's
representation.  Should Claim 4(g) prevail, Ali may move this
court to reconsider its decision with respect to Claim 7.

(quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)).  Contrary
to the implication of Ali's framing of the issues, Justice
Conboy never played the role of a judge reviewing her own
rulings when she participated in the direct appeal.  The issues
briefed in the 2008 direct appeal related to the validity of the
2008 conviction, and the only issue concerning the 2004
conviction asserted in the notice of appeal in the later
proceeding related to the enhancement of the felony charge based
on the 2004 conviction.  The direct appeal of the 2008
conviction did not involve any direct or indirect challenge to
the validity of the 2004 conviction.

Moreover, there is no other ground upon which this court
could find that Justice Conboy's prior involvement in Ali's 2004
case rendered her involvement in the direct appeal a violation
of Ali's due process rights.  Justice Conboy's role in Ali's
2004 case was limited to issuing a TRO on March 29, 2004, when
Justice Conboy was a Superior Court judge, upon reviewing a
complaint detailing allegations of domestic abuse asserted by an
individual named Loretta LeeRoy, and directing that a hearing on
those allegations be held a week later.  Superior Court Judge
Philip Mangones presided at the April 8 hearing and issued the
final protective order.  Ali's September 2004 conviction in
Goffstown District Court arose out of charges that Ali violated
Judge Mangones's final order.  Justice Conboy was not involved

43

in the Goffstown District Court proceedings relating to that conviction.  Where there were layers of superseding court proceedings between Justice Conboy's involvement in the case and the relevant conviction, and where the 2004 conviction was not based on Ali's violation of any order issued by Justice Conboy, the Due Process Clause did not require Justice Conboy's recusal from Ali's direct appeal of the 2008 conviction.[9]  Moreover, Justice Conboy's single justice orders denying Ali's pro se motion, while he was represented by NHAD Attorney Borchardt, do not manifest judicial bias.  Cf. Liteky v. United States, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion").  Accordingly, the warden's motion for summary judgment is granted as to Claim 9.

II.  Ali's Motions (doc. nos. 30 and 36)

      Ali has moved for summary judgment (doc. no. 30) on his petition, and has also moved to dismiss the Class A felony indictment, see Doc. No. 36.  Through both motions, Ali seeks dispositive relief on his § 2254 petition.  A

---

      [9]Ali filed a motion to disqualify Justice Conboy in Ali v. Reilly, No. 2013-0155 (N.H.), the case in which Ali sought review of the Superior Court's denial of his state habeas petition challenging the 2004 conviction.  Justice Conboy recused in that case, without stating her reasons.  Justice Conboy's recusal in that case does not affect this court's determination that the Due Process Clause did not require her recusal in the direct appeal of the 2008 conviction.

federal statute, 28 U.S.C. § 2254(b)(1), prevents this court from granting a § 2254 petition if the petitioner has not exhausted all available state remedies on his federal claims. Ali has not demonstrated exhaustion of Claim 9. Ali's motions (doc. nos. 30 and 36) for dispositive relief are denied on that basis.

### Conclusion

For the foregoing reasons, the court orders as follows:

1.   The respondent's motion for summary judgment (doc. no. 41) is granted in part and denied in part.  The motion (doc. no. 41) is granted with respect to Claims 1-3, 4(a)-(f), and 6-9, and Ali's § 2254 petition is denied as to those claims.  The respondent's motion (doc. no. 41) is denied, without prejudice, as to Claims 4(g) and 5.  The respondent may refile a motion for summary judgment on Claims 4(g) and 5, after furnishing this court with the additional transcripts and portions of the state court record, as specified in this order.

2.   Ali's motions for summary judgment and to dismiss a state indictment (doc. nos. 30 and 36) are denied.

3.   Within thirty days of this order, the respondent shall furnish this court, and serve petitioner, with the following:

- the complete transcript of the February 2, 2009, sentencing hearing in Ali's 2008 conviction;

45

- the complete transcript of the September 28, 2004, plea and sentencing proceeding in Ali's 2004 conviction;

- the complete transcript of the February 15, 2011, evidentiary hearing on Ali's motion to withdraw the nolo plea in the 2004 conviction;

- the sentencing memoranda filed by the state and the defendant in the 2008 criminal case; and

- such other documents derived from the state court record that are relevant to the court's consideration of Claims 4(g) and 5.

4.    Within thirty days of filing all three transcripts specified above, the respondent shall either file a motion for summary judgment on Claims 4(g) and 5, or notify this court, in writing, that an evidentiary hearing is necessary to resolve disputed issues of material fact relating to those claims.

SO ORDERED.

_____
Joseph Laplante
United States District Judge

March 31, 2014

cc:  Dominic S. Ali, pro se
     Elizabeth C. Woodcock, Esq.
     Francis Charles Fredericks, Esq.