STATE OF NEW HAMPSHIRE

HILLSBOROUGH COUNTY SUPERIOR COURT - SOUTHERN DISTRICT

| | | |
|---|---|---|
| THE STATE OF NEW HAMPSHIRE, | ) | Superior Court Case Nos. |
| | ) | 216-2008-S-00858 |
| Complainant, | ) | 216-2008-S-00859 |
| | ) | 216-2008-S-00862 |
| vs. | ) | 216-2008-S-00864 |
| | ) | |
| DOMINIC ALI, | ) | Nashua, New Hampshire |
| | ) | February 02, 2009 |
| Defendant. | ) | 1:37 p.m. |
| _____ | ) | |

SENTENCING
BEFORE THE HONORABLE JAMES J. BARRY
JUDGE OF THE SUPERIOR COURT

APPEARANCES:

For the Plaintiff:           Brett J. Harpster, Esq.
                             HILLSBOROUGH COUNTY ATTORNEY'S
                             OFFICE
                             Spring Street Courthouse
                             30 Spring Street
                             Nashua, NH 03060

For the Defendant:           Anthony L. Introcaso, Esq.
                             INTROCASO LAW OFFICE
                             120 Peak Street
                             Manchester, NH 03104

Audio Operator:              Electronically Recorded
                             by Kathie Calder

TRANSCRIPTION COMPANY:       AVTranz
                             845 North 3rd Avenue
                             Phoenix, AZ 85003
                             (800) 257-0885
                             www.avtranz.com

Proceedings recorded by electronic sound recording; transcript
produced by court-approved transcription service.

## I N D E X

| WITNESS(ES) | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| FOR THE STATE: | | | | |
| None | | | | |
| FOR THE DEFENDANT: | | | | |
| None | | | | |

| MISCELLANEOUS | PAGE |
|---|---|
| Sentencing | 19 |

1          (Proceedings commence at 1:37 p.m.)

2               THE CLERK:  For the record, Your Honor, this is the

3    case of State of New Hampshire versus Dominic Ali.  This is

4    scheduled for a sentencing.

5               Would counsel identify yourselves for the record,

6    please?

7               MR. HARPSTER:  Good afternoon, Your Honor.  Brett

8    Harpster for the State.

9               MR. INTROCASO:  Good afternoon, Your Honor.  Tony

10   Introcaso for Dominic Ali.

11              THE COURT:  All right.

12              All right.  Mr. Harpster, there's no probation

13   report, is there?  No, there's not.  All right.

14              MR. HARPSTER:  As you're aware, Your Honor, the

15   Defendant was convicted after a trial by jury of two Class A

16   misdemeanors, false imprisonment, obstructing the reporting of

17   a crime; and two counts of second degree assault, one of which

18   was -- we'll be seeking -- it was charged as a Class A felony,

19   and I'll read the proposed sentences recommended by the State.

20              With respect to docket number 08-S-0864 for the crime

21   of obstructing report of a crime, we're asking the Defendant be

22   sentenced to the House of Corrections for 12 months, stand

23   committed, concurred with docket number 08-S-0862, with

24   pretrial confinement credit of 364 days.

25              Other conditions would be:  Ordered to be of good

1    behavior; comply with all the terms of his sentence; shall have

2    no contact directly or indirectly or through others with Sarah

3    Nagy, that's N-A-G-Y.

4            We're asking for the exact same sentence on

5    08-S-0862, for the conviction of false imprisonment.  Sentenced

6    to the House of Corrections, 12 months, stand committed, again,

7    concurrent with 08-S-0864.  Pretrial confinement credit of 800

8    -- I'm sorry, 364 days.

9            On docket number 08-S-058 (sic), conviction for

10   second degree assault, and this is charged, at least

11   punishment, for a Class A felony, the Defendant be sentenced to

12   State Prison for not more than ten years, nor less than five

13   years, to be served as follows:  Stand committed, commencing

14   upon the completion of his House of Correction sentences, to be

15   served consecutive to those House of Correction sentences.

16   Court recommends -- or we ask that you recommend drug and

17   alcohol treatment and counseling.

18           Additional conditions would be:  That he participate

19   meaningfully and complete any counseling, treatment and

20   educational programs as directed by the Correctional Authority

21   probation/parole officer; and that he's ordered to be of good

22   behavior and comply with all the terms of this sentence.  We

23   further request that he shall enter and complete an anger

24   management program and a domestic violence program, and he

25   shall have no contact with Sarah Nagy.

1          Lastly, on docket number 08-S-0859, also conviction

2   for second degree assault, that we ask that he be sentenced to

3   State Prison for not more than seven years, nor less than

4   three-and-one-half years, to be served as follows:  Stand

5   committed, commencing, again, upon completion of the House of

6   Correction sentences, to be served consecutive to the House of

7   Correction sentences but concurrent with the other second

8   degree assault conviction on 08-S-058 (sic).

9          And those are the State's recommendations.  And,

10  again, you're probably familiar with the motion to dismiss,

11  that you denied, Your Honor, pursuant with 173-B:9, since the

12  Defendant has had a prior conviction for violation of a

13  protection order within the past six years, and now has been

14  convicted of a domestic violence related crime, we're asking

15  that the conviction for 08-S-0858 be treated as a Class A

16  felony punishable up to seven-and-a-half to 15 years.

17          Thanks.

18          THE COURT:  All right.  Have you complied with the

19  Victim's Rights Act?

20          MR. HARPSTER:  Yes, we have, Your Honor.

21          THE COURT:  All right.

22          MR. HARPSTER:  The last time I spoke with Ms. Nagy

23  was actually at the time of trial, and she wanted Mr. Ali to go

24  to State Prison.  Unfortunately, I have had no contact with her

25  since the conclusion of the trial but for she told me that he

1    sent her a letter, but I've never seen the letter, and I have

2    not spoken with her since; notwithstanding the fact that I've

3    written to her and tried to call her on numerous occasions.

4              THE COURT:  Have you reviewed the probation report?

5              MR. HARPSTER:  I have, Your Honor.

6              THE COURT:  Any corrections?

7              MR. HARPSTER:  None of which I'm aware, Your Honor.

8              THE COURT:  All right.  Mr. Introcaso, have you

9    reviewed the probation report?

10             MR. INTROCASO:  Yes, Your Honor.  I took a brief look

11   at it this afternoon.  I was over at Superior Court in

12   Manchester last week, and came to learn that the file had

13   already been transported down here.

14             Mr. Ali has been through the probation report.  The

15   Public Defender Office has been through the probation report.

16   And there are some simple corrections that need to be made with

17   regard to the probation report.

18             In the police version -- the police version of the

19   probation report it contains allegations relating to the

20   charges that were dismissed at trial or which Mr. Ali was found

21   not guilty.  And those allegations should not be considered by

22   the Court in sentencing.

23             The criminal record portion of the presentence

24   investigation report also indicates that there are two

25   convictions for violating restraining order.  There's only one

1  conviction, Your Honor, for violating restraining order in

2  Goffstown, not two.  And that was the basis for the Class A

3  felony indictment that was brought against Mr. Ali.  So those

4  are the two areas in the PSI that we would put on the record

5  that need to be corrected.

6         The other interesting thing that I found with regard

7  to the PSI, Your Honor, is that, this being a second degree

8  assault case where the victim is Sarah Nagy, under victim

9  input, "Attempts to make contact with the victim, Sarah Nagy,

10  have been unsuccessful.  However, it's this officer's

11  understanding that Ms. Nagy has informed Hillsborough County

12  Attorney's Office that she would like to see the Defendant

13  sentenced to prison for what he has done."

14         That's an interesting representation by, I believe it

15  was Officer Jock (sic) who wrote the PSI.  Let me just make

16  certain it was.  Yeah, Officer Paul Jocks writes the PSI.  I

17  don't know, Judge, specifically what attempts Paul Jocks has

18  made to contact the victim in this particular case.  I like

19  Paul.  I think he does a good job.

20         But I've had another case with him where there were

21  multiple counts of aggravated felonious sexual assault.  Again,

22  another Public Defender situation where I've come in and no

23  victim input.  And I don't believe Sarah's here today with us.

24  I have not had a chance to personally speak with Sarah

25  regarding the case, Judge.  But apparently the Public Defender

1  investigator had an opportunity to speak with her at length

2  regarding this particular case and this particular incident and

3  what happened here.  And her input in August of last year with

4  regard to this particular case was that Mr. Ali has served

5  enough time at that point, and that he didn't need to be

6  incarcerated any further.  And I have a two-page investigative

7  report that was prepared by the Public invest -- the Public

8  Defender investigator, and she took quite some time to talk

9  with Sarah Nagy about these things.

10      And so we have an individual who spoke directly with

11  her, as well as Brother Harpster who says he spoke -- but we

12  have two and opposite views, and Ms. Nagy's not here today to

13  tell us exactly what she would like to see happen.  So the

14  burden is left upon you, Judge, with regard to sentencing in

15  this particular case.  And if I may go forward with that?

16      THE COURT:  Certainly.

17      MR. INTROCASO:  Thank you, Your Honor, for your

18  patience.

19      As the Court knows, I was appointed to represent

20  Mr. Ali in early December of last year.  And I immediately went

21  over and spoke with him at the jail because he had been in jail

22  for quite some time at the Valley Street Jail.  As the Court

23  well knows, the Valley Street Jail is a maximum custody

24  facility, and everyone there is treated as such.  Not only the

25  inmates, Judge, but the attorneys as well who go and visit.

1   It's very onerous to go in Valley -- the Valley Street Jail.

2          Mr. Ali comes to us from Sudan.  He's a refugee from

3   Sudan.  And he's been in the Manchester area for approximately

4   six or seven years.  He's been convicted of two felony

5   offenses.  And when I looked at the two felonies, both

6   indictments tract the same in terms of second degree assault.

7   One has bruising in it; both I believe use the mental state of

8   recklessly.  And so the Court had litigated before it motions

9   to dismiss by the Public Defender's Office.  They were denied,

10  and that's an issue that will be addressed at some other point.

11  But in any event, he's subject to be sentenced to the maximum

12  term on each one of those indictments, and he was found guilty

13  of the two misdemeanor charges.

14          Dominic is 23 years old, Judge.  And his prior record

15  consists of a disorderly conduct misdemeanor and a violation of

16  a protective order, in which he served 29 days at the House of

17  Correction.  As of today's date, he has spent 365 days pretrial

18  confinement credit on these charges.  And I note that Brother

19  Harpster notes 364 days.  So we should correct that.

20          The other correction that we need to make, Judge, is

21  that sentencing Mr. Ali to 365 days stand committed on the

22  misdemeanor charge takes away the ability of the Department of

23  Corrections, the superintendent, to award pre -- good-time

24  credit for Mr. Ali.  And that comes to us from the case of

25  State versus Edson, State versus Ricky Edson, where in that

1  particular case Judge Smukler gave Mr. Edson 365 days stand

2  committed on his DWI second misdemeanor, and then he gave him

3  maximum consecutive State Prison terms.

4        So I hope that we can avoid that issue during this

5  hearing, and not award him his pretrial credit on a

6  misdemeanor.  And if the Court seeks to impose a State Prison

7  sentence, that he be awarded his pretrial credit on the prison

8  sentence.  So I'm trying to avoid that, Judge.

9        I want to talk about Dominic Ali, and the Court

10  imposing what potentially could be a death sentence for him.

11  For him to go back to Sudan is certain death.  His family fled

12  the war in Sudan; specifically, the Darfur region, and he came

13  to the United States.  And he's been convicted and found

14  guilty.  If he were to receive a sentence greater than one year

15  he could be subject to deportation.

16        He is still subject to deportation, and there is an

17  immigration hold on him at the jail.  And so then we come to

18  the point of, well, the State seeks to incarcerate him for five

19  to ten years stand committed.  And depending on who you talk

20  to, Your Honor, the cost of incarceration for an individual as

21  an inmate, to us as taxpayers of the State of New Hampshire, is

22  anywhere from 30- to $40,000 a year.  And so I ask the Court

23  from that standpoint, does it make sense to put someone at the

24  State Prison for five years who then faces deportation to Sudan

25  and we absorb the cost of that.

1       He's 23 years old.  He has one misdemeanor

2   conviction.  We have what, first blush looked to me like,

3   alternative theories of indictment.  And the one indictment

4   talks about bruising.  We have a young woman who suffered a

5   broken collar bone and some bruising; and we have one

6   indictment that talks about recklessly as the mental state and

7   the broken collar bone.  And then we have the other indictment

8   which talks about the broken collar bone and the bruising.  The

9   question then becomes, well, at what point do you stop

10  indicting someone?  Could you bring more indictments as a

11  result of injuries, one bruise, two bruise, three bruise, four

12  bruise, five bruise?  I think the Court knows where I'm going

13  with that particular discussion.

14      And so the question is, are we able to help Dominic

15  Ali is some way?  How do we assist him?  How do we protect the

16  community?  How do we protect Mr. Ali?  What do we do for

17  deterrence?  What do we do for punishment?

18      And if the Court takes a few minutes to read the

19  sentencing memorandum that was prepared by the Public Defenders

20  you see that Mr. Ali is a working individual.  He has held

21  fulltime employment.  They've included a letter from his

22  employer, North American Equipment Upfitters, where he worked

23  for almost two years, was a very good employee, and was told

24  that he certainly more than welcome to work there fulltime when

25  they have the work available for him.

 1          The Public Defender's also included a letter from his

 2    sister, which is a very nice letter and it's very well written.

 3    And Dominic Ali is 23 years old, and at this point in time I'm

 4    not certain that it's necessary to send him directly to the New

 5    Hampshire State Prison.  He served 365 days at the Valley

 6    Street Jail.  Certainly a suspended sentence with a three-year

 7    probationary period would insure the safety of the community in

 8    Manchester.

 9          And I ask the Court to take a look at what he's

10    availed himself of while at the House of Correction pretrial.

11    And the certificates have been attached to the sentencing

12    memorandum, and he's participated in what's available to him at

13    the House of Correction to try and improve himself.  Does he

14    have some disciplinaries while he was at the House of

15    Correction?  Yes, he does, Your Honor.  There's no -- there's

16    no doubt about it.

17          But I'm going to ask the Court to impose a one-year

18    -- an 11-month stand committed sentence, and give him pretrial

19    credit of 365 days.  And in an effort -- in an effort to avoid

20    potential deportation to Sudan.  Does that mean that he will

21    not be deported?  No it doesn't.  As I've explained to Dominic,

22    conviction of the behavior in and of itself could potentially

23    lead to your deportation.  But I don't have the answer to that

24    question, Your Honor.

25          THE COURT:  I don't think the 11 months matter if the

1    -- if ICE considers it a domestic violence of -- conviction,

2    and the second degree assault is something that I understand

3    they consider a major felony, which may make him subject to

4    deportation.

5            MR. INTROCASO:  That's correct, Your Honor, an

6    aggravated felony as well.

7            So what I'm asking the -- what I'm asking the Court

8    to do is, rather than warehouse Mr. Ali for one, two, three,

9    four, five, six, however many years at the New Hampshire State

10   Prison, if in fact the ICE hold is there, the Immigration

11   Customs and Enforcement hold is there, then he needs to move on

12   to the next step and face the potential consequence of the

13   deportation -- deportation proceedings and not incur the costs

14   or expenses of having him warehoused in the State of New

15   Hampshire for a significant period of time.

16           I did speak with Mr. Ali's sister who phoned me from

17   Canada.  She was not available to be here today.  I did not

18   speak with his mother in Portland, Maine.  I asked Dominic if

19   -- if there was any way she could be here today.  He indicated

20   to me that his mom doesn't have any way of being transported or

21   getting down here from Portland, Maine.  So he is here today,

22   Your Honor, by himself, and we're asking the Court to impose

23   the time-served sentence.

24           Thank you, Your Honor.

25           THE COURT:  All right.  Mr. Harpster?

1              MR. HARPSTER:  Thank you, Your Honor.

2              With all due respect to Attorney Introcaso -- again,

3    I do have a great deal of respect for -- for Mr. Introcaso.

4    The State remains steadfast and firm with its recommendation

5    for the following reasons.  First of which, if you recall the

6    testimony at trial, Your Honor, this is an extremely, extremely

7    violent incidents.  Not only did the Defendant break the mother

8    of his child's collar bone by throwing her on the floor -- if

9    you remember the photograph, which I have here, he repeatedly

10   kicked her on the backside, showing these numerous bruising.

11             It was also testified at trial that the only way that

12   this woman escaped from that house that evening was by jumping

13   out a window with one of her children, going to her next-door

14   neighbor's house and calling the police.  He took her cell

15   phone, and for the grace of God, she was able to escape there.

16   Lord knows, things could have been worse.

17             Now I don't know why Sarah Nagy hasn't called us

18   back.  I can't answer that.  But all's I know is, her last

19   representation to me, which was at or near the time of trial in

20   September of last year, was that he -- she wanted him to go to

21   State Prison.  But notwithstanding that, I don't think what

22   Sarah Nagy wants or doesn't want is really the central issue

23   for Your Honor in considering what to impose a sentence for

24   Mr. Ali.  The facts of this case is what warrant whatever

25   sentence you feel is appropriate.  And the facts of this case,

1  I respectfully submit, warrant extensive incarceration for

2  extremely violent incidents.

3        Now I've heard a lot of things about the sentencing

4  memorandum.  Yes, Mister --

5        THE COURT:  I don't have a copy, though.

6        MR. HARPSTER:  You don't?

7        THE COURT:  No.

8        MR. HARPSTER:  May I approach?

9        THE COURT:  I have the letter, but.

10     (Pause)

11        MR. HARPSTER:  Would you like a moment to review

12  that, Your Honor?  Sure.

13     (Pause)

14        THE COURT:  All right.  Mr. Harpster.

15        MR. HARPSTER:  Thank you, Your Honor.

16        While on its face, in reviewing the document you just

17  reviewed, it would -- one would like to congratulate or at

18  least give Mr. Ali some credit reviewing those programs while

19  -- completing them while at the House of Corrections.  However,

20  since the Defendant was arrested for these charges, which was

21  February 4th of '08, he has accumulated nine disciplinary

22  infractions while at the House of Corrections.

23        On April 13th, violation of general rules; April

24  20th, extra clothing; June 2nd, lying to staff; June 2nd,

25  fighting, mutual combat.  For those things he was punished --

1  given cleaning details.  He was -- spent six days in the --

2  another unit.

3          On July 31st, profanity, threats to others.  He was

4  reclassified to another unit.

5          On August 11th, disobeying staff, 24-hour lockup.

6          On September 25th, possession of unauthorized meal

7  item.  On October 22nd, violation of general rules.  Now I just

8  called over the jail today and spoke with Lieutenant Malone,

9  and he told me that on December 13th of '08 there were

10  additional infractions of profanity, threats and disobeying

11  staff.

12          So on first blush it may look like he's doing good

13  things over there, but he continues his violent behavior, not

14  going by the rules of the House of Corrections.  So, quite --

15  quite frankly, even though he's been incarcerated, I don't

16  think he's getting the message while he's over there.

17          And lastly, with respect to Attorney Introcaso's

18  argument about ICE, Immigration Customs Enforcement, I think we

19  should treat Mr. Ali as we would treat a resident of New

20  Hampshire.  He should get the sentence that he deserves for the

21  crimes committed, very violent crimes.  Yes, do I want our

22  taxpayers spending more money?  Not really.  But he should

23  serve the time that he deserves to serve.

24          Let's hypothetically say that you impose the 11-month

25  sentence that's been recommended by Attorney Introcaso and he

1   is imported to Sudan.  Then he's not really being punished,

2   Your Honor.  What if he comes back from Sudan?  How do we know?

3   If he's sent to Sudan now he will not be punished as he should

4   for these violent crimes that he committed.  That's what he

5   deserves.  He did deserve -- right, let's let Immigration

6   Customs Enforcement handle him as a separate issue from what he

7   deserves with respect to these convictions for these very

8   violent domestic crimes.

9          So for those reasons, Your Honor, we believe that

10  this should be dealt with now.  This is not an issue for ICE.

11  Let them decide that down the road.  Because he should serve

12  the maximum time for what you believe is appropriate under the

13  circumstances for these very violent offenses.

14          Thank you.

15          MR. INTROCASO:  If I may, Your Honor?

16          With regard to Dominic Ali's record at the House of

17  Correction, if you would, I have a partial one here and --

18          THE COURT:  You have what?

19          MR. INTROCASO:  I have a partial disciplinary record

20  from the House of Correction.  And what -- what's significant,

21  Judge, is that cleaning detail, cleaning detail, 24 -- guilty,

22  guilty, plead guilty, plead guilty, plead guilty.  So he

23  accepts responsibility for what he has done.

24          What I found interesting in this particular case,

25  Judge, when I came into it was that there was no -- there

1   appeared to be no negotiations between the parties with regard

2   to resolving the case.  I believe there was an offer, but there

3   was never any counteroffer in the case.

4            Again, I have to reiterate that the memorandum I

5   received from the Public Defender investigator talking with

6   Sarah Nagy with regard to this situation, she firmly believes

7   that the amount of incarceration Dominic had done by August of

8   last year was sufficient with regard to this particular case.

9            And in terms of treating Mr. Ali as a New Hampshire

10  native, well, Your Honor, there's no reason why we wouldn't be

11  able to do that if, in fact, he would be permitted to remain in

12  Manchester, New Hampshire.  There are no guarantees that that

13  will occur.  The detainer is there.  The State Prison, if he is

14  sent to the State Prison, would merely warehouse him until the

15  end of his minimum term, and then release him or parole him to

16  the detainer.  At which point he would be lost in the

17  immigration system, and potentially return to Sudan once those

18  proceedings are completed.

19       (Counsel and Defendant confer)

20            MR. INTROCASO:  I'm asking -- I'm asking Dominic if

21  he would like to speak to the Court.

22            THE DEFENDANT:  Your Honor, if my victim is here

23  today, you know, I just would like to say I'm sorry.  You know,

24  I'm not the type of person that does, you know, crimes and, you

25  know, commit violent crimes.  You know, I accept responsibility

1   and -- and, you know, I just -- I feel sorry, you know,

2   whatever happened to her.  You know, she's -- she's also

3   contacted -- you know, she was writing letters to me and, you

4   know, I know I'm not supposed to be talking to her.  But --

5   and, you know, just -- you know, she just -- she told me, you

6   know what I'm saying, she doesn't know what happened.  And

7   obviously she explained to me that I have alcohol problems and

8   anger management.

9           So this is -- this is something I wanted to do.  If I

10  get out, you know, I'm just going to take some anger management

11  class and some alcohol class, and just, you know, be a good

12  citizen.

13          MR. INTROCASO:  Thank you, Your Honor.

14          THE COURT:  Thank you.

15          Anything further from either side?

16          MR. HARPSTER:  No.

17     (Pause)

18                          SENTENCING

19          THE COURT:  All right.  Mr. Ali, would you stand,

20  please.

21          Mr. Introcaso, I recall this case, particularly

22  because of the brutality involved.  And it all stemmed from the

23  Defendant's displeasure while he was out with another couple

24  visiting Ms. Nagy and watching the Super Bowl together.  You

25  know, and his conduct amounted to nothing less than torture, as

1   well as the injury inflicted upon that woman.  And if she

2   hadn't jumped through a window with one of the minor children

3   she may very well not be here because of her death.

4         It was particularly violent.  And I've always taken a

5   position, I think you've heard me say, it isn't much of a man

6   that hits a woman.  And it's ironic to read the sentencing

7   memorandum with regard to the plea for Mr. Ali to protect him

8   against deportation to Sudan, and particular Darfur.  Darfur

9   has been considered one of the world's most worst human rights

10  and humanitarian catastrophes.  What happened to Ms. Nagy that

11  night is known as one of the world's most worst catastrophes,

12  and I'm going to adopt the recommendation of the State.

13        Mr. Ali, on indictment on 08-862 and 864, you are

14  sentenced to the House of Correction for a period of 12 months,

15  stand committed.  These sentences are concurrent with each

16  other, and on each you are order a pretrial confinement credit

17  of 364 days.

18        On indictment 08-864, other conditions of the

19  sentence are the Defendant is ordered to be of good behavior

20  and comply with all terms of this sentence.  The Defendant

21  shall have no contact directly or indirectly or through others

22  with Sarah Nagy.

23        On indictment 08-858 and 859, findings of guilty are

24  entered.

25        On 858 the Defendant is sentenced to the New

1  Hampshire State Prison for not more than ten years, nor less

2  than five years.  There is added to the minimum sentence a

3  disciplinary period equal to 150 days for each year of the

4  minimum term of the Defendant's sentence to be prorated for any

5  part of the year.

6         This sentence is to be served as follows:  Stand

7  committed commencing upon completion of the House of Correction

8  sentence on 864 and 862.  This sentence is consecutive to that

9  imposed on 08-864 and 862. The Court recommends to the

10 Department of Corrections drug and alcohol treatment and

11 counseling.

12        And the following conditions of this sentence are

13 applicable whether incarceration is suspended or imposed.

14 Failure to comply with these conditions may result in the

15 imposition of any suspended or deferred sentence.  The

16 Defendant is to participate meaningfully and complete any

17 counseling, treatment and educational programs as directed by

18 the Correctional Authority or parole officer.

19        The Defendant is ordered to be of good behavior and

20 comply with all of the terms of this sentence.

21        The Defendant shall enter and complete an anger

22 management program and domestic violence program.  And the

23 Defendant shall have no contact with Sarah Nagy.

24        On indictment 08-859, the Defendant is sentenced to

25 New Hampshire State Prison for not more than seven years, no

1    less than three-and-one-half years.  There is added to the

2    minimum sentence a disciplinary period equal to 150 days for

3    each year of the minimum term of the Defendant's sentence, to

4    be prorated for any part of the year.  This sentence is to be

5    served as stand committed, commencing upon completion of the

6    House of Correction sentence on indictment 08-864 and 862.

7    This sentence is consecutive to that imposed in    08-864 and

8    862, and concurrent with that just imposed on 08-858.

9           And the following conditions of this sentence are

10   applicable whether incarceration is suspended or imposed.

11   Failure to comply with these conditions may result in the

12   imposition of any suspended sentence.

13          The Defendant is ordered to be of good behavior and

14   comply of all of the terms of his sentence.

15          Can we get a sentence review form?

16          THE MONITOR:  Yes.

17          THE CLERK:  Do you want me to read it?

18          THE COURT:  Go ahead.

19          THE CLERK:  Dominic Ali, you are hereby notified that

20   you have the right to apply for a review of the State Prison

21   sentence imposed on you today.  The application may be filed

22   within 30 days after the date of sentence, but not thereafter

23   except for good cause shown.  If you file such an application,

24   your sentence will be reviewed by a board of three members who

25   will be either Superior Court Justices, Senior Justices or

1  retired Superior Court Justices.  Review of the sentence may

2  result in a decrease or increase of the minimum or maximum term

3  within the limits fixed by law, or there may be no change in

4  the sentence.  The form for making application, if you wish to

5  do so, is set forth below.

6          THE DEFENDANT:  All right.

7          THE CLERK:  The record will indicate that Mr. Ali has

8  been given an application for sentence review.

9          Mr. Ali, you are remanded to the custody of the

10  sheriff for transportation.

11          We'll take up the case of State --

12          MR. INTROCASO:  Thank you, Your Honor.

13          MR. HARPSTER:  Thank you, Your Honor.

14          THE CLERK:  -- versus Dominic Tankersly (phonetic).

15          MR. INTROCASO:  Let the record reflect that Mr. Ali

16  is filing his request for sentence review right now with the

17  Court.

18          If I may, Your Honor.

19          THE COURT:  Sure.

20          MR. INTROCASO:  Thank you.

21      (Proceedings concluded at 2:13 p.m.)

22

23

24

25

CERTIFICATE

    I, Tami S. Mayes, CET**D-547, a court approved transcriptionist/proofreader, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my professional skills and abilities.

TRANSCRIPTIONIST:  Tami S. Mayes, AAERT Cert. No. 547

Tami S. Mayes, CET**D-547                     April 19, 2014
Proofreader