UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Dominic Ali, Petitioner

       v.                                             Docket No.: 1:12-cv-185-JL

Warden, Northern New Hampshire
        Correctional Facility

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS 4(g) and 5**

The respondent previously filed a motion for summary judgment, Doc. 41, which this Court granted in part, denying the motion with respect to Claims 4(g) and 5 without prejudice, Doc. 46.  Pursuant to this Court's orders, the respondent files the following supplemental memorandum of law in support of its motion for summary judgment.

The respondent continues to believe that this case can be decided on the transcripts and pleadings that have been filed with this Court.

Should the petitioner file a response to this pleading, the respondent respectfully asks this Court for the opportunity to respond.

I.      **CLAIMS**

Two claims remain before this Court.

Claim 4(g) alleges ineffective assistance of counsel where sentencing counsel allegedly "[f]ailed to investigate whether the 2004 conviction which provided the basis for enhancing the 2008 felony charge, had been obtained in violation of the petitioner's constitutional rights." Doc. 46: 10.

Claim 5 alleges that:

Attorney Anthony Introcaso, appointed to represent [the petitioner] at sentencing, denied [the petitioner] the effective assistance of counsel, in violation of the petitioner's Sixth Amendment rights, in that Attorney Introcaso:

a. Failed to challenge the PSI's materially incorrect statement of [the petitioner's] prior criminal record, and inaccuracies in the PSI regarding [the petitioner's] current convictions;

b. Failed to provide the PSI to [the petitioner] prior to the sentencing hearing;

c. Failed to assert as a mitigating factor during sentencing that [the petitioner] had received ineffective assistance of counsel at trial, insofar as Attorney Introcaso knew, but failed to tell the trial judge, that trial counsel never advised The petitioner before trial of the improbability of acquittal and the benefits of accepting a plea bargain; and

d. Did not review the sentencing recommendations prepared by [the petitioner's] trial counsel prior to the sentencing hearing, and did not prepare or offer the sentencing court any sentencing proposal on [the petitioner's] behalf.

Doc. 46: 10-11.

## II.   PROCEDURAL BACKGROUND

On September 28, 2004, the petitioner appeared in the Ninth Circuit Court in Goffstown (*Lawrence*, J.).  Doc. 50-1: 1.  He entered a *nolo contendere* plea to violation of a protective order.  Doc. 50-1: 2.  He was represented by Ryan Norwood of the New Hampshire Public Defender's Office.  Doc. 50-1: 1.

The petitioner was subsequently tried and convicted in the Northern District of the Hillsborough County Superior Court (*Barry*, J.) of two second-degree assault charges, as well as misdemeanor charges.  Before sentencing, trial counsel filed a 22-page memorandum on the issue of sentencing.  Doc. 47-1: 1-22.  After filing that motion, trial counsel withdrew and the court appointed Anthony Introcaso, Esq., as the petitioner's lawyer.

On February 2, 2009, the petitioner appeared before the court for sentencing. Doc. 50-2: 1.  The court sentenced him to two concurrent sentences of twelve months in the House of Corrections on the misdemeanor convictions, followed by a term of five to ten years in the state prison on one second degree assault count, with a concurrent sentence of three and a half to seven years on the other second degree assault count.  Exh. A: 7-10.[1]

On February 15, 2011, the Ninth Circuit Court (Goffstown) (*Lawrence*, J.) held a hearing on the petitioner's claim that his 2004 plea of *nolo contendere* was involuntary.  Doc. 41-2: 19; *see also* Doc. 50-3: 1.  The trial court found, after listening to the recording of the plea, that the petitioner's "recollection of the circumstances surrounding the entry of the plea lack[ed] credibility."  Doc. 41-2: 19.  The trial court further found that the plea was entered "knowingly, intelligently, and voluntarily."  *Id.*   The petitioner filed a notice of appeal.  Doc. 41-2: 14. The state court declined the appeal as untimely on July 25, 2011.  Doc. 41-2: 20.

---

[1] This exhibit was filed conventionally with the respondent's answer.

### III.   ARGUMENT

#### A.   Claim 4(g)

The petitioner contends that the lawyer who represented him at sentencing was ineffective when he "[f]ailed to investigate whether the 2004 conviction which provided the basis for enhancing the 2008 felony charge, had been obtained in violation of the petitioner's constitutional rights." Doc. 46: 10. He has claimed that his plea in 2004 was not voluntary, nor was it intelligent. Doc. 14: 9.

#### B.   Standard For Ineffective Assistance Of Counsel

"The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). To establish an ineffective assistance of counsel claim, the petitioner must demonstrate two things: (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

Under the first requirement, there is a "strong presumption" that counsel's tactics fell "within the wide range of reasonable professional assistance." *Id.* at 689. Only if counsel's choice of action was so unreasonable that no competent attorney would have made it is the first prong satisfied. *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006).

As to the second requirement, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This is a highly demanding and heavy burden." *Knight*, 447 F.3d at 15 (internal citation and quotation marks

omitted).   Failure to move for a judgment of acquittal does not satisfy the *Strickland* test if the evidence is supporting a conviction is strong because, under those circumstances, the defendant cannot show prejudice.  *Strickland,* 466 at 691-92; *see also United States v. Brodie*, 524 F.3d 259, 273 (D.C. Cir. 2005) (no prejudice where evidence of guilt was "overwhelming").

A defendant has the right to have a sentence imposed free of "misinformation of a constitutional magnitude."  *United States v. Tucker*, 404 U.S. 443, 447 (1972) (sentence was premised on two constitutionally invalid convictions).  This proscription includes sentences that are imposed "on the basis of assumptions concerning his criminal record which [a]re materially untrue."  *Townsend v. Burke*, 334 U.S. 736, 741 (1948).   "Such a result, whether caused by carelessness or design, is inconsistent with due process of law."  *Id*.  Nevertheless, "[f]air prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which [the United States Supreme Court] would not agree."  *Id.*

C.    Argument

The respondent has two responses to the claim raised in section 4(g).  The first is that, because the petitioner failed to file a timely appeal from the circuit court's April 3, 2011 ruling, the claim is waived.  The second is that the record shows that the petitioner freely entered a *nolo contendere* plea in 2004 and stipulated to the conviction for purposes of trial.  As a result, his claim that sentencing counsel was ineffective for failure to challenge this conviction is without support on the record.

With respect to the first contention, federal courts are "precluded from reviewing state court decisions on habeas review if the decision rests on independent and adequate state law grounds."  *Olszewski v. Spencer*, 466 F.3d 47, 62 (1st Cir. 2006) (internal citation and quotation marks omitted).

An "independent and adequate" state law ground exists if the state court declined to review the petitioner's federal claims because the petitioner failed to satisfy a state procedural requirement.  *Id.*  A habeas claim can be "procedurally defaulted" in this manner in two main ways.  *Pike v. Guarino*, 492 F.3d 61, 67 (1st Cir.), *cert. denied sub nom Pike v. Bissonette*, 552 U.S. 1066 (2007).  First, a habeas claim is deemed procedurally defaulted "if the state court has denied relief on that claim on independent and adequate state procedural grounds."  *Id.*  Second, the claim is "procedurally defaulted if it was not presented to the state courts and it is clear those courts would have held the claim procedurally barred."  *Id.*

In this case, the state court specifically found that the petitioner had failed to file a timely notice of discretionary appeal.  Doc. 41-2: 26.  This Court, therefore, should be precluded from reviewing the petitioner's claim.

But even if this Court is unpersuaded on this ground, the petitioner's claim is still unavailing.  This is for two reasons:  (1) the petitioner had been convicted in 2004; and (2) This even if sentencing counsel did not investigate the voluntariness of the 2004 plea, the representations that the petitioner made about his 2004 plea to the reviewing court are completely false.

With respect to the first reason, this case is in stark contrast to a case in which a court increases a sentence based upon the misapprehension that the defendant has a conviction or conviction.  *See e.g. Townsend*, 334 U.S. at 740 (Criticizing the sentence as the result of "foul play or of carelessness" where the sentencing court relied on two charges of which the defendant had been acquitted.).  Nor was the plea constitutionally invalid because the petitioner was not provided counsel.  *See e.g. Tucker*, 404 U.S.at 447.   There is no indication that the petitioner

even bothered to challenge his 2004 conviction until after it was used in his sentencing proceeding.

A review of the record bears this out.  On September 28, 2004, the petitioner appeared before the court and was represented by counsel.  Doc. 50-1: 1.  At that time, the court asked the petitioner if he had reviewed the acknowledgment and waiver of rights form with his lawyer.  Doc. 50-1: 2.  The petitioner answered that he had.  *Id*.

The court then asked if he understood that the consequences of pleading *nolo contendere* included the provision that he would be waiving an offer of proof and that he would be found guilty.  *Id*.  The petitioner indicated that he understood.  *Id*.  The court then asked if he had "[a]ny questions about that?"  *Id*.  The petitioner answered, "No."  *Id*.  The court then explained that the petitioner was entitled to a jury trial and that the State bore the burden of proof.  Doc. 50-1: 3.  The petitioner responded that he understood those constitutional protections.  *Id.*  Counsel then told the court that the petitioner's plea was knowing, intelligent, and voluntary.  *Id*.

At the 2011 hearing, the petitioner claimed that the allegations underlying his 2004 plea were false.  Doc. 50-3: 4.  The petitioner told the 2011 court that he had only pleaded *nolo contendere* because his lawyer had "threatened" him with a potential sentence of six months in jail.  Doc. 50-3: 6..  He said that his lawyer did not explain the rights that he was forfeiting and that he did not understand the consequences of his plea.  Doc. 50-3: 6.

Further, he said that the court "didn't say anything about acknowledgment of rights."  Doc. 50-3: 6.  He said that the judge had threatened him with five years in prison.  *Id.*  He said that by not explaining his rights to him, the court and his lawyer "just basically set [him] up for failure."  Doc. 50-3: 10.  He specifically denied that the court had asked him if his lawyer had reviewed the acknowledgment of right with him.  Doc. 50-3: 12.

These representations are demonstrably untrue.  In contrast to his assertions in the reviewing court, the court did review his rights with him, asked if he understood the consequences of his plea, and began the colloquy by referring to the acknowledgment of rights form.

Moreover, despite his contention in 2011 that the allegations underlying the charges were false, he explicitly waived a challenge to those allegations in 2004.  The 2004 court specifically told him that the plea would be accepted without an offer of proof and that he was waiving that offer.  Doc. 50-1: 2.  And he agreed to the waiver.  Doc. 501: 2.

The reviewing court found that the petitioner's recollection concerning the plea "lack[ed] credibility."  This finding is completely supported by the record and the petitioner cannot show this Court that the finding "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding,'" *Teti v. Bender*, 507 F.3d 50, 56 (1st Cir. 2007) (quoting 28 U.S.C. § 2254(d)(2) (2006)).

Nor has he shown that the challenged ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *Knight v. Spencer*, 447 F.3d 6, 11 (1st Cir. 2006) (internal citation and quotation marks omitted).  To the contrary, the transcript of the 2004 plea hearing shows that the court informed the petitioner of his rights and that the petitioner voluntarily and intelligently waived them.

In short, he has not demonstrated a basis for federal habeas corpus relief.

**B.     Claim 5**

The petitioner further claims that the lawyer who represented him at sentencing was ineffective.  He argues that the lawyer:

a.      Failed to challenge the PSI's materially incorrect statement of [the petitioner's] prior criminal record, and inaccuracies in the PSI regarding [the petitioner's] current convictions;

b.      Failed to provide the PSI to [the petitioner] prior to the sentencing hearing;

c.      Failed to assert as a mitigating factor during sentencing that [the petitioner] had received ineffective assistance of counsel at trial, insofar as Attorney Introcaso knew, but failed to tell the trial judge, that trial counsel never advised The petitioner before trial of the improbability of acquittal and the benefits of accepting a plea bargain; and

d.      Did not review the sentencing recommendations prepared by [the petitioner's] trial counsel prior to the sentencing hearing, and did not prepare or offer the sentencing court any sentencing proposal on [the petitioner's] behalf.

Doc. 46: 10-11; *see also* Doc. 1: 16-17.

**B.      The Sentencing Claims Are Waived.**

At the outset, the respondent reiterates the position that it took at the time that it filed its motion for summary judgment.  The petitioner did not raise these claims in his first claim of ineffective assistance of counsel and he later withdrew that claim.  When he attempted to reinstate those claims, which did not include this one, his petition was dismissed with prejudice. Doc 41-2: 10-11.  The claim of ineffective assistance of sentencing counsel would have been procedurally barred, because the petitioner had knowledge of the claim and failed to raise it, the state courts would see the claim as procedurally barred.  *See* 41-2: 63 (Order).   Further, his claims regarding the statute were later rejected by the trial court.  Doc. 41-2.  This Court has no reason to believe that the petitioner's representations in this regard have any merit.

### C.     The Merits

Nevertheless, the respondent will address the merits of the petitioner's claims.

### 1.      Failure to Challenge the Presentence Investigation Report (PSI)

The petitioner contends that "[c]ounsel knew that P.S.I, report was based on the two conviction[s] of the petitioner. He failed to challenge the P.S.I. report that was based upon doubt." Doc. 1: 16.

This argument simply misstates the facts.  At the time of sentencing, the petitioner's criminal record was not in dispute.  For purposes of his trial, as noted in the respondent's memorandum of law in support of its motion for summary judgment, the petitioner stipulated to his prior conviction for Violation of Protective Order, Docket No. 04-1627, Goffstown District Court, Goffstown, NH.  *See* Doc. 18: 14-15.  Further, according to the sentencing memorandum filed on his behalf, the defense acknowledged that he had the 2004 conviction, discussed above, and a conviction in 2006 for disorderly conduct.  Doc. 47: 4.

While he contends for purposes of this proceeding that his plea to the 2004 charge was defective, he did not challenge the conviction in a direct appeal.  Notably, he has made no similar challenge to the 2006 conviction.  At the time that sentence was imposed in 2009, he did not question counsel's representations regarding his record.  *Compare* Doc. 50-2: 6 (counsel's representations) with Doc. 50-2: 18 (the petitioner's statement to the court).

Moreover, it is not true that sentencing counsel did not challenge the accuracy of the report.  At sentencing, counsel pointed out that the report contained a factual error that the petitioner had two convictions for violation of a protective order, when, in fact, he had one.  Doc. 50-2: 6.  Sentencing counsel made a correction that was supported by the record.  He cannot be

faulted here for challenging a conviction that had been in place since 2004 and had never, to that date, been questioned by anyone. *Cf. United States v. Wright*, 573 F.2d 681, 684 (1st Cir.), *cert. denied,* 436 U.S. 949 (1978) ("Counsel is not required to waste the court's time with futile or frivolous motions.").

Although he insists that his 2004 plea was in some manner defective and, therefore, constitutionally infirm, he never told the 2009 sentencing court this. Instead, he told the court that he was "not the type of person that does, you know, crimes and, you know, commit violent crimes." Doc. 50-2: 18. He told the court that he had anger management and alcohol problems. Doc. 50-2: 19. He told the court that he was sorry. Doc. 50-2: 18-19. He did not, however, tell the court that the PSI was incorrect and that the court should correct the errors that he now insists were in the report. Given the petitioner's misrepresentations concerning the entry of his plea in 2004, this Court has no reason to give credence to his claim that his 2004 plea was involuntary.

### 2.      Failure To Review The Report

Trial counsel filed a motion to withdraw on January 20, 2009. Doc. 8:16. According to the petitioner's pleading, sentencing counsel was appointed the following day. *Id.* If this representation is true, sentencing counsel was appointed shortly before sentencing. Doc. 50-2: 1. Counsel told the sentencing court that, upon being appointed counsel to the petitioner, he "immediately" went to the Valley Street Jail to see him. Doc. 50-2: 8.

In contrast to his insistence that counsel did not review the PSI with him, his counsel told the court that the petitioner had "been through the probation report." Doc. 50-2: 6.[2] Given a chance to address this alleged misrepresentation, the petitioner said nothing to draw it to the sentencing court's attention.

---

[2] It is not clear that sentencing counsel reviewed the report with the petitioner. Counsel told the court that the file had been transferred the previous week when he went to the court in Manchester and that he had given the report "a brief look" that afternoon. Doc. 50-2: 6. He then went on to offer corrections to the report. Doc. 50-2: 6.

Despite the fact that trial counsel found it necessary to withdraw, it is abundantly clear that trial counsel and sentencing counsel were thoroughly prepared for his hearing. For example, the petitioner included with his petition a copy of a draft sentencing memorandum. Doc. 8: 9. This document shows that either trial counsel or sentencing counsel reviewed the mitigating information and prepared a thorough sentencing recommendation.[3] Since the petitioner has included a copy of the draft, it seems likely that counsel sent it to him for his review. In that regard, it seems unlikely that no one reviewed the P.S.I. with him, even if sentencing counsel was not able to do so because the file had already been transferred.

At sentencing, counsel recounted information that might persuade the court to mitigate the sentence. Doc. 50-2: 9-12. Counsel talked about the impact of a lengthy sentence on the petitioner's ability to remain in the United States of America, directed the court to his client's employment history and letters submitted to the court, and highlighted the efforts the petitioner had made to take advantage to the course offerings at the jail. Doc. 50-2: 9-12. He made all of the arguments that might be persuasive to the court. Indeed, with the exception of his latter-day claim that his 2004 plea was involuntary, the petitioner has not pointed to an argument that should have been made, but was not.

In short, the petitioner cannot show that counsel was ineffective on this record. But even if he could, he has not shown prejudice. He has not shown that, but for this alleged failure, his sentence would have been different. And he cannot do so for two reasons, both of which are clear from the record.

First, despite his counsel's best efforts, the petitioner had done little to aid his own cause. While he had taken classes at the jail, he had also repeatedly violated its rules. Doc. 50-2: 15.

---

[3] It appears that it may have been trial counsel because, in the draft, the writer notes, "In our sentencing memorandum, we provided the Court with some information on the conditions in Sudan." Doc. 8: 11. Trial counsel filed that memorandum on December 2, 2008. Doc. 47: 7.

Within the previous year, he had accumulated nine disciplinary infractions.  *Id*.  These included

lying to staff, fighting (mutual combat), profanity, and threats to others.  Doc. 50-2: 15-16.

According to the prosecutor, as recently as December 13, 2008, fewer than two months before

sentencing, the petitioner had committed additional infractions, including profanity, threats, and

disobedience to the staff.  Doc. 50-2: 16.

Nor did the petitioner contest these violations.  Instead, his counsel argued, in rejoinder,

that he had accepted responsibility for all of the infractions by pleading guilty to them.  Doc. 50-

2: 17.

Second, the trial court "recall[ed] this case, particularly because of the brutality

involved."  Doc. 50-2: 19.  The petitioner's conduct "amounted to nothing less than torture."  *Id.*

The court said that the petitioner's could have well led to the victim's death.  Doc. 50-2: 20.  The

crimes were "particularly violent."  *Id.*  The court dismissed the request for mercy on the ground

that the petitioner could be returned to Darfur.  *Id*.  The court found that request "ironic"

because, although Darfur was "one of the world's most worst [sic] human rights and

humanitarian catastrophes," it was no different from what the petitioner had inflicted on the

victim.  *Id*.

On this record, the petitioner has not show counsel was ineffective.  But even if he could,

he cannot show that, given his cruel and inhumane treatment of the victim, which the court

characterized as "nothing less than torture," the court would have imposed a different sentence.

In sum, he cannot show prejudice.

###### 3.      Failure To Raise An Ineffective Assistance Of Counsel Claim At Sentencing

The petitioner next contends that it was ineffective for counsel not to raise ineffective assistance at trial as a mitigating factor in sentencing.  Doc. 1-1: 16.  This assertion, although factually correct, avails the petitioner nothing.

Ineffective assistance of counsel is raised as a collateral proceeding, rather than as a matter for a direct appeal, under New Hampshire law.  *State v. Veale*, 154 N.H. 730, 736, 919 A.2d 794 (2007) ("[W]we have previously indicated that such a claim should be adjudicated in the superior court by collateral review, and should not be prematurely merged with a defendant's other claims on direct appeal.").  As a result, ineffective assistance of counsel is not a mitigating factor in sentencing; rather, it is a means to attack a conviction or a sentence after the conviction is final or sentence is imposed.

The petitioner has not shown that he suffered prejudice from this alleged deficiency.  He raised his claims in the state court and they were unsuccessful.  The sentencing court was very specific in expressing its disapproval of the petitioner's behavior.  An argument that his trial counsel had been ineffective, given the cruelty of the petitioner's actions, would have probably fallen on unreceptive ears.  The petitioner cannot show that, but for this alleged deficiency, the outcome of his sentence would have been different.

###### 4.      Failure To Prepare A Sentencing Recommendation

The petitioner's representations in this last claim are, again, unsupported by the record. Despite the fact that the lawyer at sentencing was relatively new to the case, the transcript shows that he prepared carefully for the hearing.  As noted above, he met with the petitioner.  Either sentencing counsel or trial counsel also reviewed the PSI with the petitioner.  Doc. 50-2: 6.

At sentencing, counsel had reviewed the sentencing memorandum filed by trial counsel and he made a well-thought-out argument that a long sentence was unwarranted because the petitioner was subject to deportation.  Doc. 50-2: 10.  Sentencing counsel pointed out that the petitioner could face death if he were returned to Sudan and urged the court to impose a sentence of less than one year because of the potential consequences in the deportation process.  Doc. 50-2: 10.  He asked the court to consider his client's work history.  Doc. 50-2: 20.  He challenged the discretion of the prosecutor in bringing what he characterized as alternative theories of the same charge.  Doc. 50-2: 11.

Moreover, sentencing counsel had not been content to simply parrot the memorandum filed by trial counsel.  Rather, he told the court that he had been in touch with the petitioner's sister, who had written the court a letter and who lived in Canada, and the petitioner's mother, who lived in Portland, Maine.  Doc. 50-2: 12-13.  Sentencing counsel made a specific recommendation of a "time-served sentence."  Doc. 50-2: 13.  To suggest that counsel was unprepared is simply unsupported by the record in this case.

But as noted above, counsel faced a very difficult task in persuading the court to impose a more lenient sentence.  The petitioner's cruelty to the victim, whose only offense was that she watched the Super Bowl with another couple, clearly impressed the sentencing court.  And the court's recollection of this cruelty was well-supported by the record developed at trial.

Trial testimony established that, when the petitioner came home, the victim had gone to bed, but her friends, Bean and Maiek, were still in the living room.  T1 28.  Upon coming home, the petitioner went into the bedroom and started hitting her with his fist, calling her a "whore." *Id*.  He told her to get up and tell Maiek to leave; when she did not, he picked her up and threw her onto the floor.  T1 29.  She landed on her left side and felt pain "everywhere."  *Id*.

15

The petitioner began kicking her in the back and buttocks; when he stopped, he went into the living room where Maiek was sleeping.  T1 30.  The petitioner "threw [Maiek] into the wall and threw him outside."  T1 30-31.  When the victim wanted to call the police, the petitioner took her cell phone and Bean's as well.  T1 31.  He then took the victim back into the bedroom and hit her repeatedly with a can of soda.  T1 31-32.

Emergency room physician John Seidner examined the victim and ordered X-rays.  T1 72-73.  The X-rays revealed an "evident" displaced fracture of the left collar bone or clavicle. T1 73-74.  The examination also revealed "a large area of contusions involving the lower portion of her back and upper buttock."  T1 74.

Finally, as noted in respondent's first memorandum of law, the sentence imposed was within the limits imposed by the enhancement statute. *See* N.H. Rev. Stat. Ann. 173-B:9, IV. Since sentencing is essentially discretionary, the petitioner has not shown that his counsel's alleged ineffective assistance operated to his detriment.

16

**IV.      CONCLUSION**

      WHEREFORE, the respondent respectfully requests that the petition for a writ of habeas

corpus be denied.

                                 Respectfully Submitted,

                                 Warden, Northern New Hampshire Correctional
                                 Facility, Respondent.

                                 By his attorneys,

                                 Joseph A. Foster
                                 Attorney General

                                 */s/ Elizabeth C. Woodcock*
                                 Elizabeth C. Woodcock
                                 Bar Number:  18837
                                 Assistant Attorney General
                                 Criminal Justice Bureau
                                 33 Capitol Street
                                 Concord, NH  03301-6397
                                 Phone: (603) 271-3671
June 9, 2014                     Elizabeth.Woodcock@doj.nh.gov

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I have served the petitioner, who is *pro se* by

sending a copy to him at his address:  Dominic S. Ali, #64554, P.C.C.F., Plymouth, MA  02360.


*/s/ Elizabeth C. Woodcock*
Elizabeth C. Woodcock